CANAL INSURANCE COMPANY, Defendant, Appellant, v. WAYNE B. PAUL, Complainant, Appellee.
—369 S. W. (2d) 393.

Eastern Section. December 4, 1962.

Certiorari Denied by Supreme Court June 4, 1963.

Arthur D. Byrne and Poore, Cox, Baker & McAuley, Knoxville, for defendant, appellant.

Sidney Davis, Clinton, for complainant, appellee.

McAMIS, P. J. Wayne B. Paul filed the bill in this case seeking a declaratory judgment that his public liability policy in the defendant Canal Insurance Company entitled him to protection under a policy provision reading:

"Temporary Substitute Automobile—an automobile not owned by the named insured or his spouse if a resi-

dent of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.''

Under the facts to be stated, the Chancellor held the Company obligated to defend an action for damages resulting from the operation of a Studebaker automobile owned by Clyde Chapman while being used by the insured as a taxicab. The defendant company has appealed. The correctness of the Chancellor's decision turns on whether the Studebaker at the time of the accident was a substitute automobile within the meaning of the policy provision above quoted.

In June, 1958, defendant issued to complainant a policy of public liability insurance insuring complainant as a "taxicab operator." The policy described the automobile covered as a 1955 model Ford and stated that it was to be used as a taxicab. The policy was renewed on June 8, 1959. On June 28, 1959, the Ford described in the policy was involved in a collision necessitating extensive repairs. In order to be able to continue his business insured induced A. B. Casey to purchase the Studebaker here in question and allow him to use it as a taxicab while the Ford was being repaired.

After about 30 days the Ford was brought from the repair shop and again put in service as a taxicab but, after two or three trips, insured found that one of the doors rattled causing passengers to become apprehensive that it might open. The repairman promised to repair the door as soon as he could get to it but, as it turned out, no repairs were made for the period of about six weeks prior to the time the Studebaker was involved

in the accident which gave rise to this suit. In the meantime during the daytime the Ford sat on the lot from which insured operated his business where the repairman was expected to get it for the purpose of repairing the door. It was not thereafter used as a taxicab but during this period the insured used it to go to and from work and on occasions it was also used by his wife. During this period only the Studebaker was used by insured as a taxicab and while it was being so used defendant's agent visited the lot to collect premiums on the policy. He tacitly admits that he saw a taxicab sign on the Studebaker.

■ Policy provisions allowing the temporary substitution of an automobile not owned by the insured for the one described in the policy are governed by the same rules of construction as other insurance contracts and are to be liberally construed and applied in favor of the insured. They are not to be narrowly construed as limiting coverage but will be construed in a manner to make the policy reasonably definite as to the vehicle covered and, at the same time, under the stipulated conditions, afford continuous protection at a premium rate fair to both insured and insurer. Farley et al. v. American Insurance Co., 137 W.Va. 455, 72 S.E.(2d) 520, 34 A.L.R. (2d) 933.

"The typical 'substitution' provision provides coverage while the substituted vehicle is being temporarily used, where the described automobile is withdrawn from normal use because of its breakdown, repair, servicing, loss, or destruction. The usual general rules of construction apply to such a provision, and it has been stated that the purpose of the provision is not to narrowly limit or defeat coverage, but to make the coverage rea-

sonably definite as to the vehicles the insured intends normally to use, while at the same time permitting operations to go on should the particular vehicles named be temporarily out of commission, thus enabling the insurer to issue a policy upon a rate fair to both insured and insurer, rather than one at a prohibitive premium for blanket coverage of any and all vehicles which the insured might own or operate.'' 5A Am.Jur. 85.

█ It is not necessary, in the absence of a policy provision so requiring in express terms, that the vehicle mentioned in the policy be withdrawn from all use in order for the insured to be covered by the substitute provision. Mid-Continent Casualty Co. v. West, Okl., 351 P.(2d) 398; 1962 supplement 5A Am.Jur., Ins., Section 87.

█ In this case, the purpose of the policy and the intention of the parties was to indemnify the insured against losses arising out of the operation of a taxicab. The use of the Ford for that purpose was the ''normal'' use and when, due to the condition of the door, the insured, acting reasonably, saw fit to withdraw it from that use and substitute the Studebaker the policy provision here invoked became applicable. The fact that he continued to use the Ford for other than the normal use contemplated by the policy will not defeat its application where the indemnity is needed for the ''normal'' use of the substitute. We are not here called upon to decide whether the insurer would be liable had the Ford become involved in an accident arising out of its use for the convenience of the insured during this period of substitution.

In Fleckenstein v. Citizens' Mut. Auto. Ins. Co., 326 Mich. 591, 40 N.W.(2d) 733, it was held not established

as a matter of law that the substitution was other than temporary although the insured ordered a new motor for the insured vehicle in May and used a car not owned by him until the installation of the motor was completed in October.

█ █ In this case the first substitution lasted 30 days and ended when the Ford was returned after being repaired following the first accident and the insured tried to use it. The second substitution lasted for six weeks. We can not say the Chancellor erred in holding the substitution temporary within the sense and purpose of the policy. The insurer, if it had chosen to do so, could have defined the term "temporary." Having failed to do so, it is to be given a reasonably liberal construction and applied in a manner to afford coverage for such reasonable length of time as the parties may reasonably have contemplated when the policy was issued.

We find no error and the decree is affirmed.

Avery, (P. J. W. S.), and Cooper, J., concur.