**ALLSTATE INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**AETNA CASUALTY & SURETY COMPANY, Dawn McCall and Alan McCall, Defendants-Appellees,**
and
**County of Wyoming, New York, Mildred Stepien, Beverly Pfeiffer, Gerald Pfeiffer, and Orten Rindell, Defendants.**

**No. 70, Docket 28166.**

United States Court of Appeals
Second Circuit.

Argued Oct. 17, 1963.

Decided Jan. 21, 1964.

Lowell Grosse, Buffalo, N. Y. (Miles, Cochrane, Grosse, Rossetti & Lord, Buffalo, N. Y., on the brief), for plaintiff-appellant.

John E. Leach, Buffalo, N. Y. (Vaughan, Brown, Kelly, Turner & Symons, Buffalo, N. Y., on the brief), for defendant-appellee, Aetna Cas. & Surety Co.

Luther Ira Webster, Rochester, N. Y. (Lamb, Webster, Walz & Telesca, Rochester, N. Y., on the brief), for defendants-appellees, Dawn McCall and Alan McCall.

Before MEDINA, HAYS and MARSHALL, Circuit Judges.

MEDINA, Circuit Judge.

The controversy between the parties to this declaratory judgment action arose out of an automobile accident in Wyoming County, New York, on September 19, 1958. Several insurance policies are involved and the issues litigated concern the specific question of which insurance company is obligated to pay the whole or part of a balance of $26,500 agreed to be paid to one of the persons injured in the accident, pursuant to a stipulation of settlement made in open court just as certain actions pending in the Supreme Court of the State of New York, County of Wyoming, were about to go to trial. Judge Henderson filed his findings and opinion, which are not reported, and concluded that Allstate Insurance Company must pay the entire $26,500. Allstate appeals and we affirm.

The individuals and the insurance companies involved are: (1) Alan and Dawn McCall, husband and wife, who severally owned two automobiles, a Renault, the property of the husband, and a Cadillac, owned by the wife. (2) Dawn McCall was employed as a Supervisor at Wyoming Community Hospital, operated by the County of Wyoming, and she was driving the Renault on the morning when the accident occurred, the other passengers in the car being nurses in the Hospital who were being driven to the University of Buffalo for the purpose of registering for courses in the fall semester. Mildred Stepien, one of the nurses, was severely injured. She sued the McCalls and the County of Wyoming in the New York Supreme Court, and the stipulation above referred to, which will be discussed later in some detail, contained the agreement to pay her, in addition to other sums, the $26,500 that lies at the center of this declaratory judgment action. (3) Allstate issued three policies to the McCalls: (a) to Alan McCall, on the Renault, a liability policy with coverage for bodily injury to one person limited to $10,000; (b) to Dawn McCall, two policies on the Cadillac, a liability policy with coverage for bodily injury to one person limited to $50,000, and a collision policy. Aetna Casualty & Surety Company issued to the County of Wyoming a policy insuring against any liability of the County arising out of the operation of a "non-owned" vehicle by an employee of the County, for bodily injury to one person limited to $200,000.

I

■ *In limine* we must decide the question whether the Renault was a "temporary substitute automobile," within the meaning of the Allstate policy on the Cadillac, for this policy covers the wife when driving her husband's car only if it is a "temporary substitute automobile," defined as follows:

" 'temporary substitute automobile' means any automobile, including a a trailer, while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

If the Renault is not a "temporary substitute automobile" as thus defined, Allstate is completely exonerated, and we

need not examine the other rulings by Judge Henderson.

Allstate contends that Judge Henderson's findings of fact on this phase of the case are clearly erroneous, and that, even if these findings are not clearly erroneous, the Renault, as matter of law was not a "temporary substitute automobile."

We turn to the evidence and the findings. In substance the trial judge found that the husband and wife changed cars for the day for the sole purpose of permitting the husband to take the Cadillac to the Valley Cadillac Corporation, the nearest authorized Cadillac Agency for the service of Cadillac automobiles, in Rochester to have a broken leaf in the left rear spring repaired and for servicing, as the car was badly in need of lubrication. This is an inference fairly to be drawn from the testimony of the McCalls. It is true that the Valley Cadillac Corporation in Rochester refused to repair a single broken leaf in the spring, and that the actual repairs were not consummated until after the accident to the Renault, which occurred on the very morning the husband was to have the spring repaired in Rochester. The lubrication, however, was attended to that morning at another service station in the vicinity, but a spare leaf was apparently not immediately available, and in any event, the work of repairing the spring could not be done that day.

■■ We think the intention of the parties and what was done to carry out such intention is controlling rather than the course of subsequent events. Nor is a contrary finding compelled by the circumstance that the husband took with him to Rochester friends employed at his place of business there, nor by proof that the husband and wife at times drove one another's cars, even when there was to be no repairing and no servicing. Other details of the evidence are discussed in the briefs but we shall not pursue the subject further, as all questions of credibility and the drawing of inferences of fact were for the trial judge's determination. Where there is substantial evidence

to support a finding of fact it is not within our province to set it aside.

■■ Jurisdiction is based on diversity of citizenship and the controlling law is that of New York. As no New York authorities construing the "temporary substitute automobile" clause have been drawn to our attention, and we have found none, we must use "all the available data" and resort to the customary judicial process to determine and apply the state law in the case before us. Merritt-Chapman & Scott Corp. v. Public Utility District No. 2, 2 Cir., 1963, 319 F.2d 94, cert. denied, 1964, 84 S.Ct. 488.

■ Allstate's argument is that there can be no "temporary substitute automobile" unless the "owned" car is completely disabled and out of all use or is actually being repaired. For the reasons stated below, we do not think the New York courts would so construe the temporary substitute automobile clause.

The first step in the legal analysis of the problem is to ascertain the purpose of the "temporary substitute automobile" clause in the context of the insurance policy as a whole.

■ The broad language on the first page of the insurance policy states that the named insured is protected under the policy "with respect to the owned or a non-owned automobile." This language appears to include any automobile that the named insured may happen to drive. A close reading of the Definition section, however, reveals that an automobile owned by a relative who is a resident of the named insured's household is deemed to be neither the owned automobile nor a non-owned automobile, and coverage is not provided to the named insured when driving such an automobile unless it is a temporary substitute as defined. Evidently, this exception to the broad coverage is made with an eye to the situation in which relatives residing together own two or more automobiles which are used interchangeably. Were it not for this exception relatives residing together could own several automobiles and purchase coverage on all of them by insur-

ing only one and paying only one premium; or, alternatively, if a separate policy were taken out on each, the combined limits of two policies would be available whenever one owner operated the automobile of the other. Any such state of affairs would necessitate a significant upward adjustment of the premiums to be paid. This is a far cry, however, from cases where one member of the family uses the automobile of another because his or her automobile is temporarily withdrawn from use because of its "breakdown, repair, servicing, loss or destruction." In other words, in those instances disclosed in the evidence where Mr. and Mrs. McCall exchanged cars for the day merely for their own personal convenience the temporary substitute clause would clearly be inapplicable.

Thus the basic purpose of the substitute clause is in no way nullified by a ruling permitting the use of a substitute car while the owned car is being driven to a repair shop or service station for repairs or servicing. Moreover, the very wording of the clause itself all but compels a construction permitting a withdrawal from normal use while the owned car is in such a condition that it can be operated. To require a total breakdown, which would mean having the car towed to a repair shop or service station, seems to us to be an unreasonable if not absurd construction. We think, on principle, the McCalls were entitled to select a convenient time and appropriate facilities for the needed repair and servicing.

It has been repeatedly held that the terms of the "temporary substitute automobile" clause may be satisfied even though the owned automobile is not immobilized, totally disabled or completely out of commission. Mid-Continent Casualty Co. v. West, Okl., 1959, 351 P.2d 398; Allstate Insurance Co. v. Roberts, 1958, 156 Cal.App.2d 755, 320 P.2d 90; Canal Insurance Co. v. Paul, Tenn.Ct. App., 1962, 369 S.W.2d 393; see Fullilove

v. United States Casualty Co., 1961, 240 La. 859, 125 So.2d 389, 392; 21 La.L. Rev. 835, 839-40 (1961).

True it is that in each of the four cases relied upon by Allstate [1] there is some language by way of dictum supporting Allstate's contention. We do not agree with such dicta, however, and we do not think the New York courts would construe the clause so narrowly. Indeed, when one considers the facts of these four cases it will be found that in each case the owned vehicle was simply in ordinary use while the named insured was driving another car. Not one of these cases involved a situation comparable to that now before us, where the owned automobile was withdrawn from normal use in the sense that it was on the trip to Rochester solely for the purpose of effecting repairs and servicing.

It is suggested that the clause is essentially ambiguous and that resort should be had to the rule that, as the insurance company drafted the provisions of the policy, the clause should be strictly construed in favor of liability. We see nothing ambiguous about the language used, provided it be understood, as the law requires it to be understood, to mean that the average person, Mr. "Joe Doakes," as the expression is sometimes used, would think it meant. Government Employees Ins. Co. v. Ziarno, 2 Cir., 1960, 273 F.2d 645. When such a "family" policy is issued, we have no doubt such a policyholder, if he read the clause at all, would think it meant that if the owned car was not being used as it would normally be used, and was being taken to a repair or service station solely for necessary repairs or servicing the clause would be applicable and the insured would be covered.

While it is interesting to observe that Allstate under its collision policy on the Cadillac, containing the same "temporary substitute automobile" clause,

1. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Robertson, 4 Cir., 1958, 259 F.2d 389; Fullilove v. United States Casualty Co., 1960, 240 La. 859, 125 So.2d 329; Erickson v. Genisot, 1948, 322 Mich. 303, 33 N.W.2d 803; Service Mut. Ins. Co. of Texas v. Chambers, Tex.Civ.App., 1956, 289 S.W.2d 949.

paid the husband the full amount of the loss on the Renault, which was practically demolished, despite the fact that Mrs. McCall suffered only minor injuries, this can hardly be construed as an estoppel against Allstate. This payment could only be legally due if the Renault was a "temporary substitute automobile" as defined in the policy. Nevertheless, Allstate may have desired to act generously in order to secure the full cooperation of the McCalls. Whatever Allstate's motives may have been in making the payment, we think no estoppel is established. We decide this phase of the case on the merits.

Thus we return to the point from which we started. In the circumstances of this case it was a question of fact whether the Cadillac had been withdrawn from normal use because of "repair" or "servicing" and Judge Henderson's finding that it was is not, in our judgment, clearly erroneous. We agree that such a finding is quite consistent with reasonable operation of the Cadillac to and from the repair facility. Thus the McCalls got what they paid for, no more, no less. Any other holding would in effect perpetrate a fraud on the policyholder.

## II

■ Is the payment of the $26,500 to Miss Stepien to be made wholly by Allstate or be prorated between Allstate and Aetna?

By the terms of the several policies the liability of both Allstate and Aetna to Miss Stepien constitutes "excess" insurance. Thus the Allstate policy provides: "the insurance with respect to a temporary substitute automobile or a non-owned automobile shall be excess insurance over any other collectible insurance." In similar fashion the Aetna policy, insuring Wyoming County against liability arising out of the operation of a non-owned vehicle by an employee of the County, is stated in the policy "to be excess insurance over other valid and collectible insurance."

Assuming *arguendo* that it is established that the accident was due solely to the negligence of Mrs. McCall, that she was at the time acting within the scope of her authority as an agent of the County, and that no other defense was available to the County, a judgment in favor of Miss Stepien would have followed against the McCalls, or Mrs. McCall and the County. Allstate would have been liable to indemnify Mrs. McCall as its named insured and also to indemnify the County as an additional insured under the omnibus clause of its liability policy on the Cadillac. But Aetna would only have been liable to indemnify the County. Aetna owed no duty whatever to Mrs. McCall. With respect to Aetna Mrs. McCall was not an insured, named or otherwise. Thus the risks were not the same and there is no basis for a holding that Aetna must share the loss. This is the critical point on this phase of the case. Canadian Ind. Co. v. United States Fid. & Guar. Co., 9 Cir., 1954, 213 F.2d 658; National Mut. Ins. Co. of Dist. of Columbia v. Liberty Mut. Ins. Co., 1952, 90 U.S.App.D.C. 362, 196 F.2d 597, cert. denied 344 U.S. 819, 73 S.Ct. 15, 97 L.Ed. 638; Scotney v. Wessaw, Phil. County Ct., 1946, 56 Pa.Dist. & Co.R. 551; see 8 Appleman, Insurance Law and Practice § 4914, pp. 400–402 (1962); see generally id. §§ 4913–4914. We find nothing to the contrary in Lamberti v. Anaco Equip. Corp., 1961, 16 A.D.2d 121, 226 N.Y.S.2d 70.

The same result may be spelled out in terms of "excess" insurance. The Aetna policy provided that its coverage in favor of the County was "excess insurance over other valid and collectible insurance." There was such other valid and collectible insurance in the policy issued by Allstate to Mrs. McCall. On the other hand, while the Allstate policy also stated that liability for use of a substitute vehicle was "excess insurance over any other collectible insurance," there was in fact no such other insurance.

In an effort to avoid the conclusion of liability to pay the entire $26,500 which follows inevitably from the application of these settled legal principles, Allstate advances a somewhat complicated argu-

ment which we find wholly devoid of merit.

As Mrs. McCall would have been primarily liable as the wrongdoer responsible for the accident, Aetna, if required to pay under its policy indemnifying the County, would have had a clear right under New York law to recover the amount of its payment from Mrs. McCall. The reason for this is that the responsibility of the County for the tort of its employee is a vicarious responsibility. See Opper v. Tripp Lake Estates, Inc., 1948, 274 App.Div. 422, 84 N.Y.S.2d 461, affirmed, 1949, 300 N.Y. 572, 89 N.E.2d 527; Kinsey v. William Spencer & Son Corp., Sup. Ct., 1937, 165 Misc. 143, 300 N.Y.S. 391, affirmed, 1938, 255 App.Div. 995, 8 N.Y. S.2d 529, affirmed, 1939, 281 N.Y. 601, 22 N.E.2d 168. Compare Kennedy v. Travelers' Ins. Co., Sup.Ct., 1926, 127 Misc. 665, 217 N.Y.S. 261. If Aetna paid pursuant to the terms of its policy it would be subrogated to the rights of the County against Mrs. McCall. This duty to reimburse the County or Aetna is something that apparently had not occurred to the McCalls until after the stipulation of settlement had been made just before the trial of Miss Stepien's action in the New York State Supreme Court against the McCalls and the County.

Seizing upon this circumstance Allstate attempts to undercut the principles of insurance law above outlined by asserting that the effect of the stipulation of settlement was to relieve the McCalls of any obligation to reimburse the County or its insurer. We need not delve into the intricacies involved in this contention, however, as the stipulation entered in the record of the New York State court proceedings on October 11, 1960, set forth in the margin [2] will not bear the interpretation put upon it by Allstate. Nothing whatever was said about letting out the McCalls or about the County or Aetna relinquishing any right of recourse or subrogation against Mrs. McCall.

The stipulation like other agreements of settlement provides for the payment of $26,500 to Miss Stepien, and it leaves for determination in the action now before us the question of who is to pay, in whole or in part. This necessarily eliminated the issue of the negligent operation of the Renault by Mrs. McCall, the question whether she acted within the scope of her duties as Supervisor of the Hospital and as the agent of the County, and it also eliminated the possible defense of the County on the ground that Miss Stepien was entitled to Workmen's Compensation. The effect of the stipula-

2. "Mr. Brown: Then, on the $26,500 there is a dispute between the Allstate Insurance Company and the Aetna Casualty and Surety Company; that the dispute is in connection with the relative rights and obligations of those two companies in reference to their policies of insurance. Allstate Insurance Company had a policy issued to Alan McCall, covering the Renault automobile involved in this accident, and it is on this policy that it is paying the said sum of $10,000. In addition thereto Allstate Insurance Company had a policy which was issued to Dawn McCall, covering a Cadillac. It is in connection with that policy that this dispute occurs. Now the question is whether the policy issued to Dawn McCall picks up after the first $10,000 of the Alan McCall policy and ahead of the policy of Aetna Casualty and Surety Company or whether 'Aetna' and 'Allstate' both share in said $26,500 (being the amount in excess of $10,000

paid under the Alan McCall policy, plus the $1,000 paid by Merchants Mutual Insurance Company) or whether the 'Allstate' has any obligation under the Dawn McCall policy. In other words their rights, and obligations under those two policies are to be determined by the Federal Court as I understand it in the present action for Declaratory Judgment. Is that a correct statement?

"Mr. Miles: That is right.

"The Court: All right.

"Mr. Miles: Now, if I may ask, your Honor, I would like to ask the attorney for the County of Wyoming, Mr. Noonan, to express his understanding and approval of this arrangement.

"Mr. Noonan: I understand the arrangement and understand it is approved by all parties.

"Mr. Webster: I understand and agree to it. I represent Mr. and Mrs. McCall personally."

tion, with respect to the payment of the $26,500 balance due to Miss Stepien, with interest as agreed, thus was to place the parties in the same posture they would have been in had a judgment been entered on a jury verdict for Miss Stepien in that amount against the McCalls or either of them and the County in her action in the New York State Supreme Court.

Much is made of the fact that Allstate provided counsel to represent both the McCalls and the County in connection with their defense of the action brought by Miss Stepien. We see nothing wrong about this. See Maryland Casualty Co. v. Pearson, 2 Cir., 1952, 194 F.2d 284. As to the numerous other contentions of the parties, it is sufficient, we think, to say that we do not find any bad faith, breach of confidence, overreaching or other misconduct of any kind on the part of any of the attorneys connected with any phase of this controversy or by any of their principals.

Affirmed.