# CAROLINA CASUALTY INSURANCE COMPANY v. GARY JOE HARMON et al.—420 S.W.(2d) 652.

Eastern Section. June 12, 1967.

Certiorari Denied by Supreme Court September 5, 1967.

Curtin, Haynes & Winston, Bristol, for plaintiff in error.

James R. Hamrick and W. Ernest Norcross, Bristol, for defendants in error.

McAMIS, P. J. Gary Joe Harmon et al, doing business as Harway Trucking Company, brought this action against Carolina Casualty Insurance Company to recover $1,649.85, the amount of a judgment rendered against them in the State of Virginia growing out of a collision involving a Mack truck pulling what is known in the record as the "Brown" trailer. From a judgment for the plaintiffs the Insurance Company has appealed.

The question at issue is one of fact: Was the Brown trailer a substitute vehicle within the meaning of a public liability policy issued by defendant insurer to Harway Trucking Company? We quote from the policy the definition of such vehicle:

"Temporary substitute automobile — An automobile not owned by the named insured * * * while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing or destruction."

The policy describes as one of the trailers insured a "1956 Trailmobile" and it is plaintiffs' insistence, sustained by the Circuit Judge, that the Brown trailer involved in the accident belonging to J. W. Combs was put in use on a trip to New York hauling a load of freight for a man by the name of Walker because the Trailmobile described in the policy had to be taken out of service to recap the tires and to have the bearings packed.

It is the insistence of the Company, as we understand, that the Trailmobile was not customarily used with the Mack truck involved in the accident. It relies upon state-

ments taken from plaintiffs by its adjuster some two months after the accident to the effect the Trailmobile "was not broken down or out of order but was parked." and that the Brown trailer was used because it was already loaded with Walker's freight. Defendant offered no other proof.

While plaintiffs did not deny signing these statements they say they gave little consideration to what they contained because the adjuster told them the matter would be taken care of. They positively denied stating intentionally there was nothing wrong with the Trailmobile and testified the facts are incorrectly stated. The adjuster was not called as a witness.

. We do not consider the statement that the Trailmobile "was not broken down" as necessarily inconsistent. It was not broken down according to the testimony. It could have been operated. It was not used on this trip in order to have it serviced by having the tires recapped and the bearings packed. It does appear some of the details set forth in the statements are inconsistent with the testimony.

Plaintiffs introduced a charge ticket for recapping tires dated December 5th, one day after the trip to New York was begun.

The testimony of the two plaintiffs and of the witness who had previously driven the Mack truck for them is all to the effect the Trailmobile would have been used on this trip except for the need to have it serviced. Under all the circumstances, the Circuit Judge after seeing and hearing the witnesses testify, accredited their testimony. We are unable to say the preponderance of the proof is to the contrary.

Some question is made in the briefs as to whether the Trailmobile was customarily used with the Mack truck. Mr. Guy Harmon testified:

"Were the Mack tractor and the Trailmobile normally pulled together as a unit?

"Yes, sir."

Gary Joe Harmon testified:

"Did you ever pull any other trailer behind this Mack tractor other than this Trailmobile?

"Not that I know of, I never did drive the Mack tractor but once prior to this.

"Had you ever known any other trailer to be pulled by this Mack tractor, while it was in the ownership or employ of Harway Trucking?

"No, I wasn't there every time it went out either. As far as I know, it wasn't. To my knowledge, it wasn't. There wasn't another trailer pulled behind it."

It is true the accident did not occur until December 12th, or 7 days after the tires were recapped. We do not regard this as material. The question is whether the substitution was made before the trip began. The insureds would not be required to take out other insurance or bear the risk themselves until the trip was over and the trailer returned to their place of business. The undisputed proof shows there was only one trip and that the Brown trailer was used continuously up to the time of the collision.

In Canal Insurance Co. v. Paul, 51 Tenn.App. 446, 369 S.W.2d 393, we said:

"Policy provisions allowing the temporary substitution of an automobile not owned by the insured for the one

described in the policy are governed by the same rules of construction as other insurance contracts and are to be liberally construed and applied in favor of the insured. They are not to be narrowly construed limiting coverage but will be construed in a manner to make the policy reasonably definite as to the vehicle covered and, at the same time, under the stipulated conditions, afford continuous protection at a premium rate fair to both insured and insurer. Farley et al. v. American Insurance Co., 137 W.Va. 455, 72 S.E.2d 520, 34 A.L.R.2d 933.

" 'The typical "substitution" provision provides coverage while the substituted vehicle is being temporarily used, where the described automobile is withdrawn from normal use because of its breakdown, repair, servicing, loss, or destruction. The usual general rules of construction apply to such a provision, and it has been stated that the purpose of the provision is not to narrowly limit or defeat coverage, but to make the coverage reasonably definite as to the vehicles the insured intends normally to use, while at the same time permitting operations to go on should the particular vehicles named be temporarily out of commission, thus enabling the insurer to issue a policy upon a rate fair to both insured and insurer, rather than one at a prohibitive premium for blanket coverage of any and all vehicles which the insured might own or operate.' 5A Am.Jur. 85.''

Affirmed.

Cooper and Parrott, JJ., concur.