Carlos R. MANNS et al., Complainants-Appellants,

v.

INDIANA LUMBERMEN'S MUTUAL INSURANCE COMPANY OF INDIANAPOLIS, INDIANA, Defendant-Appellee.

Court of Appeals of Tennessee, Western Section.

Jan. 12, 1971.

Certiorari Denied by Supreme Court May 3, 1971.

Jack McNeil, Memphis, for complainants-appellants.

Albert T. McRae, Nelson, Norvell, Wilson, McRae, Ivy & Farmer, Memphis, for defendant-appellee.

CARNEY, Presiding Judge.

Complainants-appellants are Carlos R. Manns, Mrs. Carlos R. (Trice) Manns, and Junius P. McQueen, Administrator of the estate of Mrs. Frank G. (Allie McQueen) Morton. Mrs. Morton was killed on March 17, 1968, in an automobile collision while riding in a 1958 Ford station wagon automobile owned by the appellants, Carlos R. Manns and/or wife. The accident occurred in the State of Arkansas. Occupants of the other automobile have filed damage suits against Manns and wife totaling some $200,000. These suits are pending.

The driver of the other automobile was an uninsured motorist. At the time of the collision the complainants, Manns and wife, were covered by liability and uninsured motorist coverage on their GMC truck by a policy issued by defendant Indiana Lumbermen's Mutual Insurance Company of Indianapolis, Indiana.

The Ford station wagon in which they were riding had been acquired by Mr. or Mrs. Manns less than thirty days prior to the date of the accident. Notice of its acquisition was given the defendant insurance company and the premium paid after the accident but within the thirty-day period required by the GMC policy.

Defendant Indiana Lumbermen's Mutual admits the policy on the GMC would have covered the Ford station wagon except for the fact that Mr. or Mrs. Manns was the owner of a 1959 Studebaker and 1948 Willys which were not insured by the defendant. The policy expressly excluded coverage on an after-acquired automobile unless all private passenger automobiles owned by the policyholder were insured by the defendant company. On this ground the defendant company refused coverage under its policy.

The complainants filed suit in Chancery Court seeking a declaration of liability against the defendant insurance company. The Chancellor found in favor of the defendant insurance company and the complainants have appealed and assigned error.

Mr. and Mrs. Manns lived in Memphis, Tennessee, but they often went to Arkansas to a fishing camp. In June, 1967, the Manns owned and operated two automobiles: (1) A 1940 GMC pickup truck which had been purchased in 1962. This is the GMC truck covered by the policy in question. It was titled in the State of Arkansas and not in the State of Tennessee and was used by the complainants, Manns and wife, for travel to and from their fishing cabin in Arkansas. (2) They owned a 1959 Studebaker titled in the State of Tennessee in the name of Mrs. Manns and they used this automobile as their Tennessee automobile to drive about over the City of Memphis.

In 1959 Mr. and Mrs. Manns had bought a 1948 Willys automobile which they used until January 1, 1963, when it was parked in the back yard of the Manns' home. The 1948 Willys has not been driven since January 1, 1963. It was in bad repair and Mr. and Mrs. Manns bought the 1959 Studebaker to replace it.

On June 17, 1967, Mr. Manns was injured when he fell off his garage in the City of Memphis while making certain repairs to it. He was unable to drive a car from June 17, 1967, until February 6, 1968. On the date of his injury on June 17, 1967, the Studebaker automobile was covered by a liability insurance policy issued by MFA Insurance Company which did not expire until August, 1967. Likewise, it bore a Memphis Motor Vehicle Inspection Sticker which did not expire until the end of August, 1967, and it bore a 1967 Tennessee license plate.

On June 17, 1967, when the complainant fell off the garage and injured himself, the Studebaker was sitting in the street in front of the complainant's home where it

had been driven or parked on June 15, 1967. Complainant testified the condition of the Studebaker was such that the motor knocked and would barely turn over; it used lots of oil; the floorboard was badly rotted; the tires were flat; the brakes were bad; the gear shift assembly was bad; the clutch grabbed; and the whole exhaust system was worn out; that replacement parts were not available and that it would cost too much to repair the car; that the car had no trade-in value; the Studebaker was never driven after complainant's injuries on June 17, 1967.

Sometime after June 17, 1967, the Studebaker was pushed into the complainant Manns' front yard and later into his back yard. The determinative question before the court below and before this court on appeal is whether or not the Studebaker and Willys were, within the meaning of the policy, private passenger automobiles at the time complainant acquired the 1958 Ford on February 29, 1968, or were junked and abandoned automobiles.

The Chancellor held that the Studebaker was not a junked or abandoned car and that its condition was such that it was not beyond repair with reasonable cost and effort and was a private passenger automobile within the meaning of the policy. Since the Studebaker was not insured by the defendant company, coverage of the 1958 Ford was expressly excluded by the terms of the policy on the GMC pickup truck. The Chancellor did not mention the Willys in his findings.

On February 9, 1968, complainant Manns had recovered to the extent that his doctor advised him he could resume driving an automobile. On February 17, 1968, complainant, before driving any automobile, called his local agent, John L. Peden, for liability coverage. Peden was the local agent who had written the liability insurance through MFA Mutual on the Studebaker beginning February 8, 1964. The MFA policy on the Studebaker expired August 8, 1967. It was renewed from time to time during the period above mentioned.

When called by complainant on February 17, 1968, the local agent, John L. Peden, sent his assistant, James F. Gunn, to see the complainant about the insurance. Gunn brought with him the expired automobile policy covering the Studebaker automobile. Peden had previously represented MFA but on February 17, 1968, was representing the defendant, Indiana Lumbermen's Mutual Insurance Company of Indianapolis, Indiana.

Complainant explained to the assistant agent, Gunn, that he wanted insurance on the GMC truck and did not want any coverage on the Studebaker and Willys located in the back yard because they were worn out and that complainant did not intend to run either of them. Assistant agent, Gunn, returned to the office and discussed complainant's written application for insurance on the GMC with the local agent, John L. Peden. Gunn told Peden that complainant did not want insurance on either the Studebaker or the Willys in the back yard because they were worn out and the complainant did not intend to drive either car. Complainant Manns had a good driving record. His application was approved and the policy issued on the GMC pickup truck.

After the complainant obtained insurance dated February 17, 1968, on the GMC pickup truck, he bought a 1961 Plymouth, on February 22, 1968, as an additional car to the GMC pickup truck. He traded the Plymouth on February 29, 1968, for the Ford station wagon. Complainants were riding in the Ford at the time of the accident on March 17, 1968. Notice of the purchase of the Ford station wagon and of the collision was given defendant company a couple of days after the collision but within thirty days of the acquisition of the Ford as provided by the policy. The premium was paid thereon. The acquisition of the Plymouth is of no consequence in this lawsuit.

The primary question raised by this appeal is whether the evidence preponderates against the finding of His Honor the Chancellor that the Studebaker automobile was an owned private passenger automobile of the complainants within the meaning of the policy. That portion of the policy relating to "owned automobile" is as follows:

" 'owned automobile' means:

(a) a private passenger or utility automobile or home trailer described in this policy for which a specific charge indicates that coverage is afforded,

(b) a private passenger or utility automobile or home trailer ownership of which is acquired by the named insured during the policy period, provided

(1) it replaces an owned automobile as defined in (a) above, or

(2) the company insures all private passenger and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company within thirty (30) days thereafter of his election to make this and no other policy issued by the company applicable to such automobile or trailer,

(c) a temporary substitute automobile, and includes while used with any automobile described above, a home trailer not owned by the named insured or a utility trailer;"

We are not cited to any Tennessee cases involving provisions of contracts of automobile liability policies similar to the one involved in this case. We have had cases in the appellate courts involving construction of the temporary substitute provisions of automobile liability policies similar to the one quoted hereinabove.

In Canal Insurance Company v. Paul (1963), 51 Tenn.App. 446, 369 S.W.2d 393, the defendant insurance company had issued to the complainant Paul a public liability insurance policy covering the complainant as a "taxicab operator" and the vehicle covered was a 1955 model Ford

which was to be used as a taxicab. The Ford automobile was involved in the collision necessitating repairs. The insured, Paul, borrowed a Studebaker which he used as a taxicab in place of the Ford. The Ford was repaired and put back in service as a taxicab.

The door on the Ford taxicab began rattling and the Studebaker was again put in service as a taxicab while waiting for the repairman to fix the door on the Ford. The repairman was dilatory in repairing the door of the Ford taxicab. The Studebaker, while being used as a taxicab, was involved in an automobile accident which gave rise to the litigation.

During the six-weeks period the Ford automobile sat on the lot of the taxicab business it was not used as a taxicab but the insured, Paul, did use it to go to and from his work and also occasionally permitted the Ford taxicab to be driven by his wife. The defendant insurance company denied coverage on the Studebaker alleging that it was not being used as a substitute for the Ford automobile but that it was being used as an additional vehicle. In the Paul case, opinion by Presiding Judge McAmis, this court announced the general rule that it is not necessary, in the absence of a policy provision so requiring in express terms, that the vehicle mentioned in the policy be *withdrawn from all use* in order for the insured to be covered by the substitute provision of the insurance policy, citing Mid-Continent Casualty Company v. West, Okl., 351 P.2d 398, 1962 Supp. 5A Am.Jur., Insurance, Section 87.

In the case of State Farm Mutual Insurance Company v. Tennessee Farmers Mutual and E. V. Markham from the Chancery Court of Benton County decided November 22, 1968, by this court, certiorari denied by the Supreme Court, unreported, this court construed a substitute automobile provision of an automobile liability policy. The contest was actually between two insurance carriers as to whether one or both had primary liability coverage. Defendant E. V. Markham owned and operated a 1955 Oldsmobile which he used for general purposes. Occasionally he used the Oldsmobile to haul small quantities of chicken and dairy feed from a local mill to his poultry farm near Camden, Tennessee. His brother, Robert Markham, had left a 1948 Chevrolet pickup truck with E. V. Markham while Robert Markham worked in Chicago. E. V. Markham had full permission to use the 1948 pickup truck of his brother any time he wished but E. V. Markham used it only occasionally. On the day of the accident, E. V. Markham had intended to drive to the mill in his own 1955 Oldsmobile but it would not start because the battery was down. E. V. Markham then took the pickup truck of his brother which was parked down near the barn and drove to the feed mill, obtained several sacks of feed and had the accident on the way back home.

A passenger in the other automobile obtained a judgment for $6,000 against E. V. Markham and driver of the other automobile as joint tort feasors which was paid by State Farm Mutual as the insurance carrier on the other automobile. State Farm Mutual brought suit against Tennessee Farmers Mutual Insurance Company, carrier of liability insurance on the 1955 Oldsmobile seeking contribution for one-half of the $6,000 judgment. It was the contention of the complainant, State Farm Mutual Insurance Company, that at the time of the collision the 1948 Chevrolet pickup truck was in fact a substitute automobile being used in place of the 1955 Oldsmobile and, therefore, E. V. Markham was covered under the Oldsmobile insurance policy. Tennessee Farmers Mutual denied liability on the grounds that the 1948 Chevrolet had been an additional vehicle. The Chancellor held that the 1948 Chevrolet pickup was a temporary substitute automobile and awarded judgment against Tennessee Farmers Mutual. Tennessee Farmers Mutual appealed. This court affirmed on authority of Canal Insurance Company v. Paul (1963), 51 Tenn.App. 446, 369 S.

W.2d 393. The Tennessee Supreme Court denied certiorari on April 7, 1969.

While there is proof that both the Willys and the Studebaker automobiles could have been made to run with minimum expense, there is no proof to rebut complainant's testimony that for all practical purposes the two automobiles were worn out. The decision as to when an automobile is worn out and whether it is suitable for further use as a transportation vehicle is peculiarly a decision for the owner.

The defendant Indiana Lumbermen's Mutual Insurance Company prepared the insurance contract in the case at bar and as a general rule its provisions will be construed liberally in favor of coverage for the policyholder. Palatine v. E. K. Hardison Seed Co., 42 Tenn.App. 388, 303 S.W. 2d 742; Patterson v. U. S., 233 F.Supp. 447 (E.D.Tenn.1964); Goodson v. Am. Home Assurance Co., 251 F.Supp. 125 (E. D.Tenn.1966).

■ An automobile which has been retired from use as a vehicle of transportation, even if it is in operable condition, is not an automobile within the meaning of the liability policy sued on in this case. Of course, the condition of the vehicle usually influences an owner in his decision whether to retire such vehicle from use.

The determinative question on this appeal is not whether the Willys and Studebaker automobiles could be made to run with minimal expense but whether they had, in fact, been withdrawn by the owner from use as vehicles of transportation.

The Willys has not been operated for five years. The Studebaker had not been operated for several months. Defendant Indiana Lumbermen's agents, Peden and Gunn, fully understood at the time the policy was issued that complainant Manns had two old automobiles in the back yard which were inoperable and had been withdrawn from use or service as transportation vehicles. At no time has complainant Manns made any effort or shown any intention to put either the Willys or the Studebaker back in service as transportation vehicles. The evidence preponderates against the finding of His Honor the Chancellor that the vehicles had not been junked by Mr. Manns.

■ Upon the rationale of Canal Insurance Company v. Paul and State Farm Mutual v. Tennessee Farmers Mutual discussed above, we hold that the Willys and Studebaker automobiles were not private passenger automobiles within the meaning of the policy and that complainant Manns and wife had full coverage on the 1958 Ford station wagon as an after-acquired automobile. Assignments of error I and II are sustained.

Since we have held that complainants are entitled to full coverage under the express terms of the policy, the questions of waiver and estoppel raised by assignment of error No. III have become moot. Assignment of error No. III is, therefore, pretermitted.

Assignment of error No. IV insists that the Chancellor erred in failing to allow attorney's fees to complainant under the authority of T.C.A. Section 56–1105. Since the defendant insurance company knew that the local agents, Peden and Gunn, would testify that they knew, at the time the policy in question was written, that the Willys and Studebaker had both been retired from service as transportation vehicles, we find that the defendant was guilty of bad faith in resisting liability in this case. However, on the authority of the old case of People's Bank & Trust Co. v. U. S. F. & G. Co. (1928), 156 Tenn. 517, 3 S.W.2d 163, reaffirmed by our Tennessee Supreme Court in the case of Tennessee Farmers Mutual Ins. Co. v. Cherry (1964), 213 Tenn. 391, 374 S.W.2d 371, we hold that T.C.A. Section 56–1105 does not apply to automobile liability policies such as the one in this case.

The decree of the lower court is reversed. A decree will be entered in this

court in favor of the complainants in accordance with this opinion. The costs in the court below and in this court are taxed against the defendant.

MATHERNE and NEARN, JJ., concur.