OPINION OF THE COURT
Harvey W. Sherman, J.
The defendant is charged in indictment number 876-83 with one count of arson in the third degree.
Upon the motion of the defendant with the consent of the District Attorney the court has conducted an in camera examination of the Grand Jury testimony and finds that the evidence submitted to the Grand Jury was legally insufficient to support the indictment and furthermore improper instructions of the prosecutor at the Grand Jury leaves this court no alternative but to grant defendant’s oral request for dismissal on the grounds of insufficiency. It is not necessary that the minutes of the Grand Jury proceeding be released to the parties in order to assist the court in making its determination.
The defendant is apparently a volunteer fireman for the East Farmingdale Fire Department who is accused of *863 damaging the cab and tires of an “old tow truck,” (a 1955 Ford tow truck), by setting the vehicle on fire.
As stated in subdivision 1 of section 150.10 of the Penal Law: “A person is guilty of arson in the third degree when he intentionally damages a building or motor vehicle by starting a fire or causing an explosion.” (Emphasis supplied.)
This statute was amended in 1979 to add a “motor vehicle”, as a subject of arson, in addition to a building (L 1979, ch 225, § 18).
The definition of a “motor vehicle” can be found at subdivision 2 of section 150.00 of the Penal Law: “ ‘Motor vehicle’, includes every vehicle operated or driven upon a public highway which is propelled by any power other than muscular power, except (a) electrically-driven invalid chairs being operated or driven by an invalid, (b) vehicles which run only upon rails or tracks, and (c) snowmobiles as defined in article forty-seven of the vehicle and traffic law.”
The legislative rationale for the amendment, effective September 1, 1979, can be ascertained from the Supplementary Practice Commentary by Arnold D. Hechtman, which accompanies section 150.00 of the Penal Law (McKinney’s Cons Laws of NY, Book 39, Penal Law, § 150.00, 1982-1983 Pocket Part, p 23):
“The term [motor vehicle], which is defined here in essentially the same manner as in the Vehicle & Traffic Law §125, is then added in each of the four sections defining the various degrees of the crime of arson.
“These amendments were part of a larger enactment establishing a State Office of Fire Prevention and Control to coordinate statewide efforts directed at the arson problem. The inclusion of‘motor vehicles,’ in addition to ‘buildings,’ as subjects of the crime of arson seems to reflect the conclusion that arson-for-profit is not limited to the torching of buildings but extends to the destruction of automobiles and trucks. Since the definition of‘building’ (subd. 1) already included such vehicles as house trailers and mobile field offices, the addition of ‘motor vehicles’ essentially *864 brings automobiles, trucks and buses within the scope of arson crimes.”
The memorandum of the State Executive Department (NY Legis Ann, 1979, p 152) states:
“statement in support
“The dramatic rise in the crime of arson in New York State has resulted in human tragedy and staggering financial losses. Arson fires erode our social fabric, destroy our cities and wreak havoc among our citizens. Estimates of losses are as much as $1.5 to $2 billion in the State per year. About one quarter of non-residential building fires are of incendiary or suspicious nature. Incendiary fires account for nearly half the total dollar losses to fires in the U.S. Unemployment, loss of tax base and social deterioration are catastrophic indirect results of arson. The crime of arson is one of the hardest to prove and convictions are difficult to secure. Sophisticated crime detection and investigation are necessary. Public awareness of the effect of arson, and training programs for police, prosecutors and fire service personnel are essential.
“This legislation will provide a systematic, state-coordinoted arson control program to encourage and supplement local efforts.”
Furthermore, as Governor Hugh L. Carey, on approving the legislation on June 12,1979 explained (NY Legis Ann, 1979, p 149): “The bill, which is based upon the recommendations of the Governor’s Conference on Arson and Arson-for-Profit represents an effort by the executive and legislative branches together with fire prevention organizations to address, on a comprehensive basis, the arson problem in New York State.”
This lengthy examination of the legislative purpose in enacting this amendment is necessary since this court, after a diligent search, cannot find a single reported decision as to the crime of arson involving a motor vehicle. More to the point, an answer is not readily available as to the query of just what does the definition of a motor vehicle encompass for the purposes of the crime of arson. This is apparently a case of first impression.
*865 As stated above, the Penal Law definition of “motor vehicle” parallels the Vehicle and Traffic Law definition, word for word.
The only reported decision which contemplated the meaning of “motor vehicle” under the Vehicle and Traffic Law is an Appellate Division, Fourth Department, case, Matter of Hall (Royal Ind. Ins. Co.) (34 AD2d 1090). In that case, the Appellate Division reversed Special Term’s conclusion that the vehicle in question was not a “motor vehicle”. “It appears from the affidavits that the injuries occurred when the automobile ‘started and ran into’ claimant; it was therefore apparently in operable condition, rather than junk, was undergoing repairs and was a ‘motor vehicle’ within the definition of section 125 of the Vehicle and Traffic Law” (supra, pp 1090, 1091). With the instant presentation, a problem arises with the description and status of the vehicle, or lack thereof, as presented to the Grand Jury. The arson squad detective who investigated the incident testified to the following: “I examined the vehicle, firstly, there was no battery in the vehicle, no electric whatever in the vehicle.”
Nowhere in the detective’s testimony or in the owner’s affidavit pursuant to CPL 190.30, can one find an allegation that the vehicle in question was operable. Nor is there an allegation that the vehicle was registered under the law of any State to travel the public highways. Also lacking is any allegation that the vehicle was temporarily off the road for repairs but intended to be used for or actually used to transport persons or property over roads and highways. An inoperable vehicle which is at no time drivable and lacking an immediate intention and ability to render the vehicle drivable or operable upon a public highway, is not a “motor vehicle” within the contemplation of the Penal Law or the Vehicle and Traffic Law. The decision in Matter of Hall (Royal Ind. Ins. Co.) (supra) is controlling. The property in question is a vehicle devoid of a battery, with “no electric whatever in the vehicle”, incapable of independent movement. It is a “vehicle” (“[e]very device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks” *866 [Vehicle and Traffic Law, § 159]) but it does not rise to the status of a “motor vehicle”.
A survey of decisions from sister States bears out this distinct status of operability and/or the physical capability and present intention to be used on the public roads and highways (Travelers Ins. Co. v Elkins, 468 SW2d 487 [Tex]; International Ins. Co. v Hensley Elec. Steel Co., 497 SW2d 64 [Tex]; Matter of Ferro Contr. Co., 380 F2d 116; Guerra v Packard, 236 Cal App 2d 272; Hakes v Paul, 34 Wis 2d 209; Manns v Indiana Lumberman’s Mut. Ins. Co., 482 SW2d 557 [Tenn]; Blankenbaker v Great Cent. Life Ins. Co., 151 Ind App 693; Travelers Ind. Co. v Duffin, 28 Mich App 142; Labove v Traders & Gen. Ins. Co., 219 So 2d 614 [La]; Palmer v State Farm Mut. Ins. Co., 614 SW2d 788 [Term]; Harshbarger v Meridian Mut. Ins. Co., 40 Ohio App 2d 296; State v Blevins, 128 Ariz 357; State v De Marco, 157 NJ Super 341; Sherman v Reserve Ins. Co., 350 So 2d 349 [Fla]; Shaw v Aurora Mobile Homes & Real Estate, 36 Col App 321; Southern Guar. Ins. Co. v Duncan, 131 Ga App 761).
Additionally, this court notes that the instructions provided to the Grand Jury by the prosecutor were inadequate and incorrect. While charging the Grand Jury on the law, the following instructions were offered: “According to the law, a motor vehicle is any vehicle not propelled by muscular power.” This incorrect charge is not the statutory definition as found in the Penal Law or the Vehicle and Traffic Eaw. This laconic misdescription completely emasculates the very essence of the statutory definition by forsaking the phrase “operated or driven upon a public highway” to such an extent that it may fairly be said that the integrity of the Grand Jury has been impaired.
“[W]e recognize that there may be situations in which the instructions to the Grand Jury are so misleading that the indictment could not be permitted to stand even though it is supported by legally sufficient evidence (see Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 210.35, pp 384-385).” (People v Calbud, Inc., 49 NY2d 389, 395.)
“The District Attorney’s failure to properly instruct the Grand Jury was not a mere irregularity or a harmless procedural defect (People v Rallo, 46 AD2d 518; People v *867 White, 44 AD2d 749). It constituted a substantive prejudicial denial of due process rendering the Grand Jury proceedings defective (CPL 210.35, subd 5).” (People v Mackey, 82 Misc 2d 766, 770.)
It cannot be said that the actions of the District Attorney amounted to mere paraphrasing of the statutory language as in People v Smith (72 AD2d 940). This omission was significant in the context of the limited testimony provided to the Grand Jury for their deliberations, so much so as to prejudice the interests of the defendant and render the indictment legally defective (People v Calbud, Inc., supra).
Furthermore, the failure to redact the portion of the defendant’s confession referring to the setting of other fires, constitutes error (People v Chaffee, 42 AD2d 172; People v Anderson, 80 AD2d 33).
For all of the above reasons this court must dismiss the indictment for lack of legally sufficient evidence and due to improper instructions by the District Attorney to the Grand Jury. The indictment cannot stand on the basis that the evidence submitted supports a legally sufficient lesser included offense. The crime of criminal mischief is not a lesser included offense of the offense of the indictment. (See People v Hollis, 73 AD2d 994.)