## Richmond

PENNSYLVANIA THRESHERMEN & FARMERS MUTUAL CASUALTY IN-
SURANCE COMPANY V. NANNIE ALEASE CARTER.

March 5, 1956.

Record No. 4487.

Present, All the Justices.

The opinion states the case.

*Sanford & Clement*, for the plaintiff in error.

*Langhorne Jones* and *Coleman B. Yeatts*, for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

Nannie Alease Carter recovered a judgment for $7500.00 against Walter Lee Jones, Jr., compensation for personal injuries

sustained on March 20, 1954, when the car in which she was a passenger collided with a truck operated by Jones and owned by David Miles. She instituted this action against Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Company, hereinafter designated defendant, to collect the judgment on the theory that the pickup truck operated by Jones at the time of the accident was covered by a liability insurance policy of defendant, bearing date February 9, 1954, to become effective March 20, 1954. A jury was waived, the case was tried by the judge of the lower court, who found for plaintiff and entered a judgment for the full amount against defendant. To review this judgment defendant obtained this writ of error.

The decisive question raised is whether the insurance contract made by Jones with defendant was effective on March 20, 1954, the date of the accident resulting in injuries to plaintiff.

On March 20, 1953, Jones purchased a liability insurance policy from defendant through its general agent, C. Mack Hasty, of Danville, Virginia, covering a Chevrolet pickup truck owned by him and paid the premium in installments, $10.00 cash, $15.00 on April 15th, and $15.00 on May 15, 1953. This policy expired at 12:01 A. M. on March 20, 1954. On February 9, 1954, Hasty wrote and held in his office a renewal of the policy covering Jones' truck and entered on his books a charge account against Jones showing the premium for the renewal policy to be $32.39 and gave Jones credit for $4.04 earned dividend on the old policy, leaving a balance due of $28.35.

Prior to March 20, 1954, Hasty sent Jones through the mails a card asking for certain information concerning the driver and the age of the insured in order to rate the policy. Jones did not return this card. On February 17, 1954, Hasty wrote Jones stating that his request for information had not been received and that he was sending another card for him to fill out and return to him promptly. Jones testified that he filled out this last card giving the necessary information and returned it to the general agent.

On March 23, 1954, Jones, by his nephew, Richard Jones, paid $15.00 on the premium, obtained a receipt for the payment and the policy. Richard Jones did not inform the general agent that his uncle, Walter Lee Jones, Jr., had had an accident in which plaintiff had been injured. On March 24th or 25th, 1954, R. H. Carter, the husband of plaintiff, informed the general agent that his wife was injured on March 20th by a truck operated by Walter Lee Jones,

Jr., and asked him did "Jones have insurance with you"? He said "Yes, he has . . . it ran out and we renewed it . . . I will write the Company and let you know something".

Defendant immediately began its investigation of the accident and on March 31, 1954, sent its attorney to see Jones, who was then in the hospital, and from him obtained a detailed account of the accident.

Hasty, the general agent, died on April 1, 1954. The American National Bank & Trust Company qualified as Administrator on his estate and proceeded to wind up his business. Miles Poindexter, Trust Officer in charge, testified that he found on Hasty's books several thousand dollars of accounts receivable, among them the account against Walter Lee Jones, Jr., for $13.35, unpaid balance due on the premium on the policy in question. On April 21, 1954, a bill for the above sum was sent Jones, and about the same time the Administrator paid to defendant at its home office the full amount of the premium on Jones' policy. On May 18, 1954, the Administrator wrote Jones that he was indebted to defendant in the above sum for the unpaid premium and unless the account was paid immediately it would be necessary to cancel his insurance.

Jones testified that he received a letter from attorneys for defendant bearing date June 1, 1954, advising that his insurance policy did not cover the operation of the truck involved in the accident on March 20th and, therefore, defendant would not defend the action for damages instituted against him by plaintiff, Nannie Alease Carter. About the same time defendant notified Jones that it was cancelling his policy as of that date and enclosed a check for $13.00 and some cents, purporting to be the unearned premium on the policy from the date of cancellation. This is an acknowledgment of the fact that defendant and Jones had consummated a contract of insurance.

Defendant contends that the coverage under this contract should begin on March 23, 1954, and not March 20th. The only argument advanced in support of this contention is that when Richard Jones paid the $15.00 for Walter Lee Jones, Jr., he did not inform the defendant's agent of the accident with the resulting injuries that occurred on March 20th, and if it had known of the accident it would not have accepted the $15.00 or have delivered the policy.

The physical delivery of the policy was not essential to its validity if an actual contract of insurance was in fact effectuated.

Whether the contract was actually consummated depends upon the facts. It was proven that it was the custom of the general agent, acting for defendant, to renew a policy for parties who had theretofore purchased insurance from him and permit the premium to be paid and credit to be extended within five days after the effective date. Jones knew that in the payment of the premium on his former policy credit had been extended and he had paid the premium on it in installments. Hasty evidently intended to apply the policy of extending credit to Jones and to permit him to pay the premium on the renewal policy in installments, as he had previously done. This is evidenced by the fact that he credited Jones' account on his books with a payment of $4.04, dividend on the old policy, and on March 23rd he credited him with the payment of $15.00, making a total payment of $19.04. Defendant, with full knowledge of the accident of March 20th, retained a part of the money paid on the premium and arbitrarily fixed the date of the beginning of the coverage as of March 23rd, three days later than the time stated in the policy itself. This, without Jones' consent, it had no right to do.

Jones testified that when he signed the card giving the general agent the information requested he thought this automatically renewed his insurance and that he would pay the balance due on the premium for the renewal in installments, as he had paid the premium on the original policy. He made no application to defendant for any other insurance. Defendant accepted and retained a part of the payment made on the premium with knowledge of this fact.

If defendant had a right to refuse to consummate the renewal contract of insurance it waived this right when, with full knowledge of all the facts, it retained a part of the premium paid by Jones and several months thereafter cancelled the contract. If there had been no contract of insurance between the parties there would have been no necessity for a cancellation. The only contract of insurance under consideration by both of the parties until the letter of cancellation was a contract of insurance beginning March 20th.

The facts in this case clearly distinguish it from the facts in *Boone v. Standard Accident Insurance Company*, 192 Va. 672, 66 S. E. (2d) 530, upon which the defendant relies. Boone had made no application to and had not accepted the offer of the insurer to renew his liability contract on his motor vehicle before the accident resulting in damage to third parties occurred. Immediately after the accident he contacted the agent and offered to accept the in-

surance contract and to pay the premium. The offer to make a contract and the payment thereon were refused. We held that no contract of insurance between the parties had been consummated.

In the case now under consideration, defendant's offer to make a contract was accepted by Jones in giving to the agent the information requested and making payment on the premium. The defendant used this information, rated the policy accordingly and retained a part of the premium paid. Several months thereafter the contract of insurance was cancelled and the unearned premium refunded. Defendant thereby admitted that a contract of insurance had been duly consummated by the parties. Its attempt to escape liability by injecting into the controversy a new, separate and distinct insurance contract to become effective March 23, 1954, is abortive.

■ Defendant's second contention is that its contract of insurance did not cover Walter Lee Jones, Jr., at the time of the accident because he was not driving his own truck, but a truck owned by his neighbor, David Miles.

Under the provisions of the insurance agreement the use of the word "automobile" is not restricted to a passenger car, but includes a truck. On the first page of the insurance agreement in large capital letters the contract is designated "NON-ASSESSABLE AUTOMOBILE POLICY". On the same page under Item 4 the motor vehicle is described in the blank space left therefor to be "1953 Chevrolet ½ Ton Pickup LBM 115224". Under Item 5 this is stated: "The purposes for which the automobile is to be used are pleasure and business . . . farm use". It thus conclusively appears that the use of the word "automobile" in the policy includes a truck that is used for pleasure and business.

Item V entitled "Use of Other Automobiles" extends coverage to the insured while operating an automobile or truck other than his own. This item is divided into two parts: (a) and (b). The conditions under which the extended coverage applies are stated in (a), and the conditions under which the insurance agreement does not apply are stated in (b) (1), (2), (3) and (4).

Defendant contends that Jones was excluded from coverage at the time of the accident by that part of Item V "Use of Other Automobiles", which reads in part as follows:

"(b) This insuring agreement does not apply:

"(2) to any automobile while used in the business or occupation of the named insured or spouse except a private passenger automo-

bile, operated or occupied by such named insured, spouse, chauffeur or servant; . . . . . "

While it is true that at the time of the accident Jones was driving a truck and not "a private passenger automobile", the undisputed evidence is that he was not using the truck in his "business or occupation." Hence, coverage for such use was not excluded under this provision.

The undisputed facts are that David Miles did not have a license to operate his own truck and that it had been regularly operated by his wife for their pleasure and business. On the morning of March 20, 1954, Mrs. Miles drove her husband in the truck to the home of Walter Lee Jones, Jr., and from there, at Miles' request, Jones drove the truck, with Miles in the cab with him, to Danville, Virginia. Jones had no business of his own to do in Danville or *en route* thereto. After Miles had completed his business in Danville a neighbor who lived near him asked him to transport a few bales of hay from Danville to the neighbor's home. Miles, as a matter of accommodation and without compensation, agreed to do this. It was while Jones was operating the truck from Danville to his home that the accident occurred. Jones was driving the truck only as a matter of accommodation.

These facts bring Jones' operation of the truck at the time of the accident within the provisions of Item V(a), "Use of Other Automobiles", the pertinent parts of which are:

"If the named insured is an individual who owns the automobile classified as 'pleasure and business'. . . . . . . . . . . . . . . . . such insurance as is afforded by this policy for bodily injury liability, for property damages liability and for medical payments with respect to said automobile applies with respect to any other automobile, subject to the following provisions:

"(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes (1) such named insured. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . "

Plaintiff's $7500.00 judgment against Jones is conclusive evidence that Jones was liable to her for "bodily injury" sustained in the accident.

The judgment of the lower court is affirmed.

*Affirmed.*