**Will ESSARY, Plaintiff-Appellee,**

v.

**HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant-Appellant.**

**No. 15850.**

United States Court of Appeals Sixth Circuit.

June 3, 1965.

Henry H. Hancock, Memphis, Tenn., Burch, Porter & Johnson, Memphis, Tenn., of counsel, for appellant.

R. A. Ashley, Jr., Dyersburg, Tenn., Ashley, Malone & Ashley, Dyersburg, Tenn., on brief, for appellee.

Before O'SULLIVAN, PHILLIPS and EDWARDS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

The question involved here is whether Wilmer A. Stafford, the insured named in a liability policy issued by defendant-appellant, Hartford Accident & Indemnity Company, was, while driving a motor truck at the time of an accident in which plaintiff-appellee, Will Essary, was injured, engaged in "any other business or occupation of" the said insured Stafford. If Stafford was not so operating the truck, defendant is liable under the "non-owned automobile" provisions of its policy to pay the plaintiff-appellee's judgment against the said Stafford. The District Judge so held in giving judgment for plaintiff-appellee in a non-jury trial. We conclude that the judgment of the District Court must be reversed.

The question arises in the following way. On September 21, 1960, defend-

ant's insured, Stafford, had been engaged by one Oakley to assist in gathering hay. The plaintiff Essary and his truck were also engaged by Oakley in such project. Defendant's insured, Stafford, was directed by Oakley to drive Essary's truck while the latter stacked on its bed bales of hay handed up by other workers. It seems clear that this total enterprise was a "business or occupation" of all those engaged in it unless the special circumstances hereinafter discussed eliminate Stafford as being then engaged "in any other business or occupation." A sudden movement of the truck threw Essary to the ground and upon suit in the Dyer County, Tennessee, Circuit Court he recovered a $12,000 judgment against Stafford and Oakley. In the state court action, Essary's declaration averred that Stafford was driving the truck as an employee of Oakley; Essary and his witnesses, and Oakley as a defendant, all testified on oath that Stafford was driving the truck as an employee of Oakley. The state court action was submitted to the jury under an instruction that Stafford was an employee of Oakley and recovery was had against Oakley under the doctrine of "respondeat superior."

Execution against Stafford and Oakley was issued upon the state court judgment and after its return of "no property found" the present suit against Stafford's insurer, the defendant-appellant, was instituted in the Dyer County Circuit Court and removed to the District Court under diversity jurisdiction. In this action, by his pleadings and proofs Essary, appellee here, no longer described Stafford as an employee of Oakley. It was necessary to avoid application of a provision in defendant-appellee's policy which excluded coverage of Stafford while driving a non-owned automobile in "any other [1] business or occupation" of the insured. Among its defenses in this action, defendant-appellant asserted that plaintiff-appellee was judicially estopped by the state court

judgment from taking the position that Stafford was not engaged in "any other business or occupation" when the tort was committed. We do not reach this question as we hold that defendant's policy provided no coverage for Stafford's liability to Essary.

At the time of the accident, Hartford had insured Stafford against liability up to $10,000 arising from use of his own automobile or from use of a "non-owned automobile." The basis of its defense to the present action is an exclusion to the latter coverage, providing that

"* * * This policy does not apply * * *

* * * * * *

"to a non-owned automobile while used * * * (2) *in any other business or occupation of the insured* except a private passenger automobile operated or occupied by the named insured. * * *" (Emphasis supplied.)

In assessing this defense, the District Judge found that Stafford had held no regular job since 1952, but had been earning something less than $1,000 a year in each of the five years preceding the accident, principally by trading in cattle, timber, and automobiles. Occasionally, however, "he had done day work as his health permitted." The District Judge said that when Oakley requested Stafford's assistance on this particular occasion,

"Stafford agreed to assist with no remuneration mentioned. Stafford did not desire money payment for his endeavors but did hope that Oakley would reciprocate by transporting some of Stafford's hogs to market at some time in the future. This type of reciprocal help is common in the Dyer County rural community, although at the time service is rendered pay may be tendered by the one receiving such services. Money remuneration in this instance was offered by Oakley, but declined by Stafford."

1. Stafford was described as a used car dealer in the policy.

Supplementing these findings [2] by reference to Stafford's testimony, it appears that he had frequently worked for Oakley and had always been paid back in either services or money. He had done handywork for others, and had driven trucks for others although never before for Oakley. He accepted this particular request because he was "trying to operate my own business. In other words, this was an exchange in my own business" of hog raising. He stated that he was "in the livestock business" and that all of his income came from "timber or livestock." In answer to further questions whether he had accepted the employment "to accommodate Mr. Oakley," he said "Accommodate him and keep—I knew he would accommodate me, when it come back to time to do that," and "There was nothing said about pay. *That is taken for granted.*" (Emphasis supplied.) Stafford said that he was feeding hogs at the time he went to work for Oakley and had a load almost ready and preferred that Oakley pay for his services by trucking his hogs rather than with money. Oakley did move the hogs for Stafford after the accident. He responded to a leading question by agreeing that his "business or occupation" had "been anything that you could do in that community that you were able to do, that you could pick up some money"? There was no contrary evidence, Oakley telling that once a week or every two weeks he and Stafford would swap work and that if Stafford "had a bunch of hogs" he (Oakley) "would haul them for him." A fair reading of Oakley's testimony discloses that he and Stafford worked together in the livestock business, helping each other with work necessary for the carrying on of that business, and that Stafford was engaged in such business when the accident here involved occurred.

Against this background, the District Judge ruled that Stafford was not operating plaintiff's truck in any "business or occupation" of his own "within the risk-confining intendment of the phrase * * * of the automobile liability policy. * * * *" Finding a connotation in that phrase of "some regularity of activity or continuity of relationship," he determined that Stafford's relationship with Oakley "was of short duration and devoid of regularity." We do not consider that in interpreting the exclusionary clause we are at liberty to add qualifying adjectives of "regular" and "continuing" to the exclusion of "any" business or occupation of the insured. We need not for our decision hold that a finding of fact by the District Judge was clearly erroneous. Except for some conclusional observations of the witnesses, the actual facts were not in dispute and the District Judge characterized his interpretation of the clause involved as a Conclusion of Law.

■ In coming to our decision, we are without substantial aid from cases decided either in Tennessee or elsewhere. The general attitude of the Tennessee courts toward clauses insuring the use of non-owned automobiles is that they "are to be liberally construed and applied in favor of the insured," Canal Ins. Co. v. Paul, 51 Tenn.App. 446, 449, 369 S.W. 2d 393 (1962). Little help is furnished by the decisions of other courts construing clauses similar to the one presently before us. The most nearly relevant of these cases are summarized in the Annotation at 85 A.L.R.2d 502, where it is concluded that coverage is excluded not only while the insured is engaged in his regular business but also while he is engaged in any other business or occupation, whether or not pursued for pecuniary gain. We need concern ourselves only with the conclusion that the broad phrase "*any* other business or occupation" has been read for its apparent value. This conclusion is supported by three current cases holding that the ex-

---

**2.** We have little quarrel with such description of the relationship between Oakley and Stafford except to say that there was much more than a "hope" by Stafford that Oakley would reciprocate, and we do not think that such relationship was merely of a type peculiar to neighbors in the "Dyer County rural community."

clusion applied where the insured, regularly employed elsewhere, was engaged for a short while in driving for the National Guard. Blackwell v. United States, 321 F.2d 96 (CA 5, 1963); Voelker v. Travelers Indem. Co., 260 F.2d 275 (CA 7, 1958); Allstate Ins. Co. v. Hoffman, 21 Ill.App.2d 314, 158 N.E.2d 428 (1959) (exclusion clause referring to *the* business or occupation of insured). It is indeed difficult to understand how the exclusion in the present case could be read to refer to a single primary line of gainful endeavor. The embracing sweep of "any" is supplemented by the definition of "business" which seems most applicable here, as "a particular subject of labor or attention; a temporary or special occupation or concern." Webster's New Internat'l Dictionary (2d ed. 1961).

■ Stafford undertook to drive the truck, and refused monetary payment, only because he expected Oakley would repay him by hauling his hogs to market. Stafford testified that Oakley did move the hogs for him. This return of services was as good as money, since Stafford would otherwise have had to find a trucker and pay for his services. We believe these facts, together with Stafford's practice of accepting whatever work he felt physically capable of performing (including truck driving) bring his driving within the "business or occupation" exclusion. Stafford was not engaged in accommodating his neighbor for purely altruistic reasons, compare Pennsylvania Threshermen & Farmers Mut. Cas. Ins. Co. v. Carter, 197 Va. 776, 91 S.E.2d 429 (1956). He agreed to drive the truck for reasons no different than those which actuate a neighborhood handyman whose "business" clearly is to accept whatever work he can get. This conclusion seems clear enough that the general policy of favoring the insured (and the injured) in interpreting unclear provisions cannot offset it.

Interpretation of the policy language would be easier if we were furnished some insight into the actuarial considerations underlying the exclusion. The District Judge apparently felt that such considerations are reasonably applicable only where the involved activity has some element of continuity or regularity, but we are unable to discover the reason for this conclusion in face of the language employed. Some guide may be found in the fact that the exclusion provision does not apply to non-owned private passenger automobiles. Trucks and tractors must be the vehicles most frequently excluded by this provision, and it is not difficult to understand exclusion of a risk peculiar even to the handyman who drives another's truck but once a year. Compare Seaford v. Nationwide Mut. Ins. Co., 253 N.C. 719, 117 S.E.2d 733, 85 A.L.R.2d 496 (1961), where the insured was employed to operate a truck for one trip only.[3] Although some of the same risks may occur where a non-owned truck is driven for purely personal reasons, we think the present case is within the limitation contemplated by the exclusion clause.

Stafford was thus driving plaintiff's truck within a "business or occupation" of his own, and the insurance provided by defendant does not apply.

Judgment reversed with direction to dismiss the complaint.

EDWARDS, Circuit Judge (concurring).

I concur in the result reached by the Court but I prefer to do so on grounds which do not bring the District Judge's findings of fact into question.

Plaintiff's declaration in the state court action specifically alleged: "Defendant Wilmer A. Stafford was also employed by defendant Clint Oakley to help with the hauling of said bales of hay. * * *" Plaintiff's own testimony, as well as the

---

3. The District Judge pointed out that it is not entirely clear whether Seaford was regularly employed by the same man for other purposes. We suspect that his regular employment was elsewhere, but the question is not important since we arrive at our conclusion independently of the Seaford decision.

rest of his evidence in the state court, supported this allegation.

On the other hand, the complaint filed by plaintiff in the United States District Court is specific in denying the existence of an employment relationship.

Plaintiff obtained his state court judgment upon allegations and evidence that Stafford was "employed" by Oakley. Defendant, in reliance on these allegations, refused to defend its insured, claiming there was no liability to indemnify under the insurance contract in the circumstances claimed by plaintiff in the state court action. The failure of defendant to defend in the state court action— based on plaintiff's prior pleadings— would obviously work to defendant's prejudice in this case if plaintiff were allowed to plead an utterly inconsistent position.

Plaintiff should be estopped from urging inconsistent positions solely because his interests have changed. Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1894); Clinchfield Railroad Co. v. United States Fidelity & Guaranty Co., 160 F.Supp. 337 (E.D. Tenn., 1958), aff'd. 263 F.2d 932 (C.A. 6, 1959).