434 P.2d 103

Richard MARTIN, R. W. Woods, Individually and dba Woods Lumber Company, Plaintiffs-Respondents,

v.

ARGONAUT INSURANCE COMPANY, Defendant-Appellant.

No. 9908.

Supreme Court of Idaho.

Nov. 21, 1967.

See also 90 Idaho 1077, 408 P.2d 475.

Moffatt, Thomas, Barrett & Blanton, Boise, for appellant.

Bandelin & Cogswell, Sandpoint, for respondent, R. W. Woods.

Stephen Bistline, Sandpoint, for respondent, Richard Martin.

McFADDEN, Justice.

This declaratory judgment was instituted by Richard Martin and Robert W. Woods, the latter doing business as Woods Lumber Company, against defendant-appellant Argonaut Insurance Company, a foreign corporation authorized to do business in Idaho. Other defendants initially named in the action were subsequently dismissed. Martin, while employed by Woods in Woods Lumber Company mill on Pack River, was seriously injured at 11:20 A.M., May 1, 1962. Martin filed a claim for compensation with the Industrial Accident Board, joining Woods as the employer and Argonaut Insurance Company as surety for Woods.

The Board dismissed Argonaut Insurance Company from that proceeding and an appeal from that order to this court culminated in affirmance of the Board's refusal to decide the issue on Argonaut's liability to Woods. See: Martin v. Robert W. Woods Lumber Co., 90 Idaho 105, 408 P.2d 474 (1965).

This action was also previously before this court. In Martin v. Argonaut Insurance Co., 90 Idaho 107, 408 P.2d 475 (1965), the judgment of the trial court that it did not have jurisdiction because of the then pending proceedings before the Industrial Accident Board was reversed and the cause remanded for further proceedings.

After remand, the trial court entered its findings of fact, conclusions of law and its decree, which decree reads in part:

"IT IS HEREBY ORDERED ADJUDGED AND DECREED That the defendant herein, the Argonaut Insurance Company, was, on the 1st day of May, 1962, and throughout the whole of said day, and particularly at the time of the injury to the plaintiff, Richard Martin, the Workmen's Compensation Surety and carrier for the plaintiff, R. W. Woods, doing business as the Woods Lumber Company, and further ordered adjudged and decreed that said defendant is estopped to deny its liability to the plaintiff Woods as surety, at the time of the injury to the plaintiff, Martin, and, in those proceedings still pending before the Industrial Accident Board of the State of Idaho, the defendant, Argonaut Insurance Company, is fully liable to the plaintiff Woods, to pay all of that liability which has attached to the plaintiff Woods by reason of the industrial accident which on the 1st day of May, 1962, occurred to the plaintiff, Martin, at the sawmill then and there being operated by the plaintiff Woods."

The trial court also awarded respondent Woods the sum of Five Thousand Dollars as reasonable attorney's fees.

This appeal is taken from the judgment and decree so entered.

Respondent Woods operated a lumber mill a few miles from Sandpoint, Idaho. One of his employees was respondent Martin. Woods, for a number of years, had the F. G. Harrell Agency (later mentioned as Harrell Agency) of Sandpoint handle his fire insurance, and workmen's compensation insurance on his employees. The Harrell Agency (owned by LeRoy J. [L. J.] McArthur, whose wife, Wilma Mae McArthur, also worked in the agency) was the agent of a number of insurance companies, including appellant.

During the course of Woods' association with the Harrell Agency and the McArthurs, Woods left the selection of the companies that would carry his particular policies with this agency. Most of his transactions were with Mr. McArthur during his lifetime.

Appellant Argonaut Insurance Company, having its home office in Menlo Park, California, and its Idaho district office at Boise, appointed the Harrell Agency as its sole representative in Sandpoint. By the agency agreement, executed March 1, 1958, appellant appointed the Harrell Agency its agent to solicit, receive and accept applications for insurance and to receive and remit premiums on its behalf. By an addendum to this agreement, the provisions of the agency agreement were made applicable to workmen's compensation insurance. Although the appellant named "F. G. Harrell Agency" in the agency agreement, both L. J. McArthur and Wilma Mae McArthur were appointed and certified as being agents of appellant.

For a number of years prior to 1960, L. J. McArthur has obtained workmen's compensation insurance for Woods, with the policies being placed in various companies other than appellant. In 1960, McArthur placed Woods' workmen's compensation insurance with appellant Argonaut Insurance Company, which company issued a policy countersigned by Wilma Mae McArthur for the policy period from May 1, 1960 to May 1, 1961, "12:01 standard time * * *." At the time this policy was issued, Woods paid the required deposit premium. Under the terms of this policy, monthly payroll reports were submitted and the actual monthly premiums computed, billed and paid. Following issuance and delivery of this policy, Woods discussed it with McArthur, Woods stating:

"A He [L. J. McArthur] told me that he and Wilma both were agents for Argonaut, and I questioned him at that time about the policy of renewal, because in the past, it had been, as far as I was concerned, automatic, and that was one thing that worried me, and he said that Argonaut operated the same way; that I would put up my deposit, at that time it was $306, and if I paid my premiums on time, made out the reports properly and there was no other reason, no reason that Argonaut wouldn't renew it, because, as it had been in the past. So I was satisfied, and I said, 'all right, I will buy Argonaut Insurance.'

Q Did you agree to make the deposit premiums and make the premiums?

A It was made, and I made every premium payment.

Q And that was under your agreement with Roy?

A That was right.

Q And his agreement was that these renewals were just like they had been. They—

* * * * * *

A Well, it is true. I questioned him for the simple reason, that with Liberty and with Argonaut once before, and I will admit that since then I have heard this, it isn't the same company, but they call it Argonaut, and with Liberty again; that I wanted to be assured that it would be the same way, because I have got too much to do to have to keep track of all these, like a renewal of insurance

policy, when to me, it always had been automatic."

Examination of exhibits reflects that previously when there was a change of insurance carrier from one company to another, these changes in each instance were accomplished without any period of time that Woods was not covered by one policy or the other.

Following issuance of this first policy by Argonaut, another policy identical to the first, except for its designation as a "renewal policy," was issued for the period of "May 1, 1961 to May 1, 1962 12:01 a. m. * * *." This renewal policy was issued without any formal application being made by Woods, or any particular request being made by McArthur. Appellant's Idaho District Manager testified in substance that within the company, renewals work automatically, that the procedures involved for renewal of a policy are put in effect without any affirmative action on the part of the insured or of the agent; he testified that about eighty per cent of the policies are renewed. Wilma Mae McArthur testified that she and her husband were not agents for any compensation carrier other than appellant during the period of May 1, 1960 to May 1, 1962, and that Woods' renewal policy came to them from appellant for signature by her. She stated that in some instances renewal policies were received prior to expiration date, a few on the expiration date, and even some after the expiration date of the previous policy.

During various times throughout the life of the original policy and the renewal policy, a safety engineer of appellant inspected the Woods' lumber mill. Reports of these inspections were sent to the main office. The final inspection was made in February 1962, and in that report it was stated, "Mr. Woods was advised that return engineering calls to his sawmill would be made on a scheduled basis."

On March 1, 1962, appellant's district manager told the McArthurs that appellant was terminating their agency. Notice of such termination was filed with the Department of Insurance of this state. No constructive notice to Woods arose from such filing with the Department of Insurance. Tucker v. American Aviation & Gen. Ins. Co., 198 Tenn. 160, 278 S.W.2d 677 (1955). No actual notice of such cancellation of authority or termination of agency was submitted either by the McArthurs to Woods, or by Argonaut to Woods.

Following this termination, Mr. and Mrs. McArthur went to Seattle to contact certain insurance brokers to try to place Woods' policies, and other insurance they had written. While there, LeRoy J. McArthur died on March 7, 1962.

Woods knew that Mr. McArthur had passed away. He stated, however, that he did not receive any word that Mrs. McArthur's authority had been cancelled. He stated:

"Q In connection with Roy's death, did you have any doubts or inquiries to make about any insurance?

A Well, surely. I suppose, about a month after Roy's death, I went in to see Wilma in regard to my insurance, as I have several policies that I have purchased through them. It was more of a casual conversation, but I did ask her.

\* \* \* \* \* \*

A And she told me that she was Agent in her own right, and she was Agent for Argonaut and various insurance companies, and that she was going to continue the business. And I asked her if things was going to be as usual and she assured me that they would be. It would go along just like when Roy had been alive. She was Agent. She was going to run the business, and when my renewals come up, they would be renewed."

This testimony is rebutted by Mrs. McArthur's testimony, wherein she stated that she didn't remember having a conversation with Mr. Woods concerning this issue. She thought they might have talked about other insurance, but that she was "positive" they didn't talk about workmen's compensation

insurance. The trial court resolved this conflict in Woods' favor when it found:

"* * * Wilma Mae McArthur, after the death of L. J. McArthur, specifically informed the plaintiff, Robert W. Woods, that she as agent for Argonaut through the F. G. Harrell Agency was going to continue in business, and that policies theretofore sold to plaintiff Robert W. Woods would be renewed as they came up for renewal."

Subsequent to her husband's death, Mrs. McArthur continued to collect and remit premiums and reports to appellant. Other events that took place following his death were Martin's injury on May 1, 1962, and receipt by appellant about May 10, at its Boise office of Martin's claim. Finally in July, 1962, following final audit of reports, appellant forwarded adjustment of Woods' deposit premium to the Harrell Agency.

The ultimate issue presented by this appeal is whether the trial court erred in its determination that appellant Argonaut was Woods' compensation carrier at the time of Martin's injury on May 1, 1962. In particular it is asserted by appellant that the trial court erred in holding that the McArthurs, as appellant's agents, were clothed with authority to agree with Woods that his workmen's compensation insurance would be renewed automatically and that appellant is estopped to deny its liability to Woods. Consideration of the individual issues presented by appellant's assignments of error directed to specific findings by the trial court becomes necessary to resolve the ultimate issue.

■■ Appellant claims the court erred in finding that L. J. McArthur and Wilma Mae McArthur did business under the legal firm name of Harrell Agency. This finding is correct from an evidentiary standpoint. Since each of the McArthurs held a certificate of appointment of authority as agent by individual name and performed services in such capacity, Mrs. McArthur countersigning the policy and renewal policies · issued by appellant to Woods, the fact that they did business under the name

of Harrell Agency is of no moment. Even though the agency of L. J. McArthur terminated upon his death, Mrs. McArthur in fact kept the business operating, and continued to act as agent for other insurance companies which had issued her certificates of appointment of authority that were not terminated.

■ Appellants challenge finding of fact No. 5, which states:

"Although there was a written agency agreement between the defendant and its Sandpoint agents, neither plaintiff, Robert W. Woods, the employer, nor plaintiff Richard Martin, his employee, had any knowledge whatever as to the terms thereof; nor were either chargeable with knowing that there was a written agreement; nor was there anything whatever putting either of the plaintiffs on notice whereby either or both would have been required to make inquiry as to the terms of any agency agreement, whether in writing or not in writing."

It is first to be observed that plaintiff Martin had no contact whatever with the McArthurs. Woods' first contact with Argonaut was when a policy of insurance, signed by Wilma Mae McArthur as resident agent, was delivered to him. At that time the agency relationship itself brought the policy into Woods' possession. When Woods called upon L. J. McArthur after delivery of the policy and inquired as to the change of the company carrying his workmen's compensation insurance, he was speaking to the duly appointed agent of the Argonaut company. Woods was fully justified in accepting this agent's statement without further inquiry. Apropos of this situation is the statement in Massachusetts Bonding & Ins. Co. v. R. E. Parsons Elec. Co., 61 F.2d 264, 268, 92 A.L.R. 218 (8th Cir. 1932):

"In discussing the authority of an agent, Cooley's Briefs on Insurance, 345 [463 in 2d ed.], states as follows: 'Though the powers of an agent may be limited by definite restrictions on

his authority and by the nature of his agency, the determination of his powers and consequently the rights of the insured must rest in the first instance on the general principle that the powers of an agent are prima facie coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals. The real question is not what power the agent has, but what power the company has held him out as having.' "

In Huppert v. Wolford, 91 Idaho 249, 420 P.2d 11 (1966), this court held, based upon I.C. § 41–337, that an insurer's resident agent who was empowered to take applications, countersign and deliver policies, collect and remit premiums and make out accident reports and transmit claims was clothed with apparent authority to bind the insurer on a parol contract of insurance. In the opinion, the court stated:

"Thus the conclusion of the trial judge that Wolford as resident agent for Western with the various powers hereinbefore enumerated, was thereby clothed with apparent authority to bind Western on a parol contract of insurance is correct. Of course, if Vloedman had been advised that Wolford was acting outside his actual or implied authority as agent for Western, or should that fact have been apparent to a reasonably prudent man under the circumstances, then no liability could have been incurred for Western. However, the trial court determined, and such finding is supported by competent evidence, that Wolford did not inform Vloedman that he lacked the authority to provide immediate coverage on the logging truck, and no contention is made that Vloedman should have known Wolford lacked such authority." 420 P.2d at 18.

By appellant's answer it is admitted that appellant is a foreign corporation authorized to do business in this state. This being true, the provisions of I.C. § 41–901 as that section read in 1960 are applicable. See: Vol. 7 Cumulative Pocket Supplement Idaho Code, 1959. See also: S.L. 1961, Ch. 330 Sec. 806. (Compare I.C. §§ 41–337, 41–338, cited in Huppert v. Wolford, supra.) Absent any facts to put Woods on inquiry, he was under no duty to inquire further as to McArthur's authority. The finding by the trial court that neither Martin nor Woods had any knowledge of the terms of the written agency agreement and that they were not chargeable with knowledge of such agreement, as well as the determination that there was nothing to put them on notice to make further inquiry is fully sustained by the evidence. It follows that McArthur as the appellant's resident agent had authority to bind appellant to the renewal agreement.

Appellant contends that any authority its agent L. J. McArthur may have had to agree for a renewal of the policy was limited by the express provision of the policy, which was delivered to Woods prior to his discussion with McArthur about renewal. The policy provision referred to, reads:

Changes Notice to any agent or knowledge possessed by any agent or by any other person shall not effect waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the President and Secretary of the Company."

It will first be noted that this provision does not specifically purport to affect the authority of an agent of Argonaut to agree to a renewal of the policy. In 4 Couch on Insurance 2d § 26:205, at 62 (1960), it is stated:

"A resident agent of a foreign insurance company, who, by statute, has authority to represent his company 'to all intents and purposes,' has power to

renew a fire policy, *notwithstanding any provision in the orginal policy which conflicts with such statute.*" (Emphasis added.)

The principal case cited for the foregoing quotation is Anderson v. Northwestern Fire & Marine Ins. Co., 51 N.D. 917, 201 N.W. 514 (1924), where it was held that the North Dakota statute defining the authority of countersigning resident agents controls policy stipulations to the contrary. In discussing the insurer's petition for rehearing, that court pointed out that the Missouri statute was unlike that of North Dakota, stating:

"In Missouri, there is no express statute like section 4959. The holding of the court, therefore, in the Prichard [Prichard v. Connecticut Fire Ins. Co., 203 S.W. 223 (Mo.App.1918)] and other analogous cases, is based on section 6315, supra [R.S.1919, Section 6315], on the theory that, inasmuch as the company is absolutely prohibited from transacting business in the state, except through an agent, such agent must be held to be the company's alter ego. In our state, the Legislature has expressly said, in section 4959, not merely leaving it to implication, that persons in this state doing certain acts in behalf of foreign insurance companies shall be their agents to all intents and purposes." 201 N.W. at 521.

In making the analogy to the law of Missouri, the North Dakota court quoted from Ferguson v. Home Ins. Co., 208 Mo.App. 422, 236 S.W. 402 (1921), as follows:

"Defendant, being a foreign corporation licensed to do business in this state, accepts such license under the provisions of the statute, and any rules, requirements, or provisions in its policies that may run counter to the statutes are of no force and effect on policies written in this state." (Emphasis added.) 201 N.W. at 521.

In Huppert v. Wolford, 91 Idaho 249, 420 P.2d 11, 16–17 (1966), this court recently cited and relied upon the Missouri cases of Ferguson v. Home Ins. Co., supra, and Prichard v. Connecticut Fire Ins. Co., supra, as well as later authorities, pointing out the similarity of the Missouri statute and I.C. § 41–337. In Huppert v. Wolford, supra, this court pointed out that the legislative purpose of I.C. § 41–337, is to protect members of the public who deal only with local agents from an absence of actual authority in such agents to act on behalf of their companies. See also: Bales v. General Ins. Co. of America, 53 Idaho 327, 24 P.2d 57 (1933); 16 Appleman, Insurance Law & Practice § 8672 (1965). This policy provision was ineffective to limit McArthur's authority to agree for a renewal.

The foregoing discussion is not to be considered as a determination that a foreign insurer may not limit the apparent authority of its local countersigning resident agent by policy provision, because in this case we are only considering whether the general non-waiver condition above-quoted alone can be effective to divest appellant's local agent of authority to enter into an agreement for an automatic renewal of the policy.

■ Even in the absence of an express agreement between a local agent and the insured, a course of conduct by the insurer which automatically renews policies over a period of years may require an actual notice to the insured of intent not to renew. Recognizing the general principle, see, e.g.: Farmers Ins. Exch. v. Vincent, 56 Cal.Rptr. 775 (Cal.App.1967); American Heritage Life Ins. Co. v. Cook, 183 So. 2d 751 (Fla.App.1966); American Fid. Ins. Co. v. Johnson, 177 So.2d 679 (Fla. App.1965), cert. denied, 183 So.2d 835 (Fla.1966); Standard Cas. Co. v. Boyd, 75 S.D. 617, 71 N.W.2d 450 (S.D.1955); Pennsylvania Threshermen & Farmers Mut. Cas. Ins. Co. v. Carter, 197 Va. 776, 91 S.E.2d 429 (1956); Emery v. Wendell Brown Agency, Inc., 66 Wash.2d 521, 403 P.2d 671 (1965); Weed v. Lepianka, 30 Wis.2d 198, 140 N.W.2d 305 (1966).

To the effect that provisions in a policy limiting the authority of an agent, and expressly providing that the agent has no authority to accept renewal premiums or grant extensions, may be waived or modified by conduct of the insured, see: Hinkson v. Kansas City Life Ins. Co., 93 Or. 473, 183 P. 24 (1919), overruled on other grounds.

It is our conclusion there was no error on the part of the trial court in concluding McArthur had the authority to bind appellant to the renewal agreement notwithstanding the general non-waiver policy provision quoted supra.

The trial court found that in early May 1960, an agreement was entered into between Woods and appellant acting through its agents that if Woods would make an advance deposit and pay required premiums on time his workmen's compensation would be renewed automatically. The court also concluded that the agreement entered into in May 1960, by appellant through its agents was legally binding upon the company, the agreement being within the authority and apparent authority of the Sandpoint agents. On this aspect of the case it is to be recalled that the principal concern of Woods at the time of his meeting with McArthur subsequent to delivery of appellant's policy was whether he would at all times be covered by workmen's compensation insurance.

During the life of the original policy and the renewal, appellant had notified Woods of intention to cancel the policy for non-payment of premiums. Woods discussed this with Mr. McArthur, since Woods had previously paid the premiums then due to Harrell Agency. McArthur assured Woods that the problem had already been taken care of. About a month before McArthur's death, another notice of intended cancellation came; Woods testified as to that occurrence as follows:

"A I got one around the 1st of February. I don't recall exactly when, but it was just before or just after inspection, and it was, oh—

"Q What year was this now?

"A 1962. And Roy came out, and he told me that it had been taken care of. I told him right then that I had to know whether I had insurance or not; that these cancellations, when they were no fault of my own, that I didn't think they were necessary, and he agreed with it. And at that time, he assured me as long as I kept my premiums paid and kept my premium deposit in, that I had nothing to worry about, that I would be insured, and that I was led to believe—

"* * *.

"A * * *. He told me specifically that, if I kept these premium payments paid, and I had my deposit in there, that it would be renewed, and I knew him to be Agent for the Argonaut Insurance Company, so I was sure that that was what it meant."

After the initial policy of insurance was issued, for the year May 1, 1960, to May 1, 1961, the renewal policy, countersigned as before by Wilma Mae McArthur, was delivered without any application being made by Woods for the renewal policy. McArthur, as agent for appellant, acting on behalf of the appellant at the time he changed Woods' policy from the prior insurer to appellant, and before this change was accepted by Woods, agreed that the policy would automatically be renewed. By making such an agreement he was acting within the scope of his authority, and the agreement was effective then.

Appellant however contends the trial court erred in finding that Woods had every reason to believe Wilma M. McArthur continued as agent for appellant and continued the business under the name and style of Harrell Agency, and further that the court erred in finding that Wilma M. McArthur could renew all policies as they came up for renewal. The record reflects that after the meeting in Boise between the McArthurs and appellant's district manager on March 1, 1962, no notice of termination of the Harrell Agency agreement, or

894

of the termination of L. J. or Wilma M. McArthur's individual certificates of appointment of agent was ever submitted to Woods. The record shows that after McArthur's death, Wilma M. McArthur continued to accept premium payments and payroll reports on behalf of appellant and submit them to its Boise office. Moreover, the agreement to automatically renew Woods' policy was entered into prior to March 1, 1962, and prior to L. J. McArthur's death. Such agreement being within the agent's authority, termination of such authority could not affect the agreement, at least in the absence of notice to Woods, actual or constructive.

■ Appellant assigns error to the admission in evidence of conversations between the decedent, L. J. McArthur, and respondent Woods. Appellant asserts that such testimony of respondent Woods constitutes hearsay evidence and was inadmissible over its objection. It is our conclusion that the trial court did not err in admitting this testimony into evidence. Woods testified as to certain conversations he had with McArthur. The testimony thus offered was submitted for the purpose of establishing that McArthur did in fact make such statements, not to establish the veracity of the statements made. See: Bumb v. Bennett, 51 Cal.2d 294, 333 P.2d 23 (1958); Granberg v. Turnham, 166 Cal.App.2d 390, 333 P.2d 423 (1958). See also: Glass v. Stratoflex, Inc., 76 N.M. 595, 417 P.2d 201 (1966); 6 Wigmore, Evidence § 1770, at 185 (3d ed. 1940); 29 Am. Jur.2d Evidence § 497 at 555 (1967).

■ Appellant assigns error to the trial court's refusal to admit its Exhibits "H" and "I." Exhibit "H" was a memorandum addressed to the F. G. Harrell Agency from an insurance broker dealing with a series of insurance accounts the McArthurs tried to place. The trial court did not err in refusing its admission into evidence, for it was never demonstrated how it would have been material to any of the issues before the court. It was offered to corroborate testimony of Mrs. McArthur

and at most would only have been cumulative. Exhibit "I" consisted of certified true copies of the probate court proceedings in Mr. McArthur's estate. The trial court refused admission of the offered exhibit as being immaterial. We find no error in the trial court's ruling, inasmuch as the estate was not a party to the action, and admission of the exhibit would not have tended to prove or disprove any issues then before the court.

Appellant asserts that there was no duty on its part to notify Woods that it was not going to renew the workmen's compensation policy, inasmuch as the original policy had a specific termination date, as did the second policy issued as a renewal of the first policy. This assertion, however, overlooks the facts presented by this record. Woods was primarily concerned with the continual workmen's compensation coverage, and when his insurance carrier was changed to appellant, Woods discussed this with appellant's local agent. The local agent advised Woods that renewals of his policy with appellant would be automatic if all payments were made. In conformity with this statement by appellant's agent, the renewal policy came to Woods with no application being submitted by him for the renewal. Appellant's district manager testified that about eighty per cent of the policies are automatically renewed. The manager also testified that determination had been made some months prior to termination of Woods' renewal policy that it would not be renewed, yet subsequent to that time, the safety engineer of appellant visited Woods' mill and advised Woods "that return engineering calls to his sawmill would be made on a scheduled basis." Even after appellant had cancelled the McArthur's authority in March 1962, Woods was never notified of this by either appellant or Mrs. McArthur and he continued to submit his monthly payroll reports on appellant's forms upon which the Harrell Agency was named as agent. The premiums due on the basis of those monthly reports were paid by check to the Harrell Agency. On substantial, although conflicting evidence, the trial

court found that "Wilma Mae McArthur, after the death of L. J. McArthur, specifically informed the plaintiff, Robert W. Woods, that she as agent for Argonaut through the F. G. Harrell Agency was going to continue in business, and that policies theretofore sold to plaintiff Robert W. Woods would be renewed as they came up for renewal." Examination of all the record refutes appellant's contention there was no duty to notify Woods it was not going to renew the workmen's compensation policy.

■ Throughout the proceedings in the trial court and again before this court, appellant has argued that its motion to dismiss the complaint should have been granted. Appellant points to the Idaho cases of Bales v. General Ins. Co. of America, 53 Idaho 327, 24 P.2d 57 (1933), and Wallace v. Hartford Fire Ins. Co., 31 Idaho 481, 174 P. 1009 (1918), as requiring an allegation of negligence on the part of an insurance agent be made for recovery under claimed insurance policies. This viewpoint, however, is too restrictive. The tenor of the complaint here is one based on the authority of an agent of an insurance company to bind the company by an agreement, to renew an existing policy and failure of the company to recognize the policy. The Bales case was one for damages, as was the Wallace case. The instant case, however, is one for declaratory judgment to determine if appellant was a compensation carrier on Woods. We find no error in the trial court's refusal to dismiss the complaint.

The final issue to be considered is the question of attorneys fees awarded by the district court to respondent Woods, as well as Woods' motion for attorneys fees to be allowed in this court. Briefly reviewing the previous proceedings, Martin and Woods instituted this action for declaratory relief in the district court in September 1962; default judgment was entered for them and later set aside. Appellant answered and the action was heard and judgment entered dismissing the action, from which judgment an appeal was taken (Martin v. Argonaut Ins. Co., 90 Idaho 107, 408 P.2d 475 [1965]). The appeal resulted in reversal of the trial court's judgment of dismissal. The cause was again presented to the trial court and the judgment involved in this appeal entered. During the course of the trial it was in effect stipulated that the trial court should, if it determined this was a proper case to award attorney fees, fix the amount thereof without the necessity of proof of what would be reasonable. The trial court found this to be a proper case to award attorney's fees to respondent Woods, its judgment provided:

"IT IS FURTHER ORDERED ADJUDGED AND DECREED That the plaintiff, herein, R. W. Woods, individually, and doing business as the Woods Lumber Company, have of and recover from the defendant Argonaut Insurance Company, the sum of Five Thousand Dollars ($5,000.00) as reasonable attorney's fees to be assessed and hereby assessed against said defendant under the statutory provisions applicable to casualty companies, and the same being a reasonable fee which R. W. Woods, plaintiff, has necessarily incurred in the prosecution of this action, and the successful appeal heretofore taken to the Supreme Court of the State of Idaho from that judgment which [was] erroneously heretofore entered herein upon the application and motion of the defendant Argonaut Insurance Company."

Woods has also applied to this court for an allowance of attorney's fees on this appeal.

Appellant contends that the trial court erred in entering an award of attorney's fees in the first instance, and further that it was beyond the jurisdiction of the trial court to allow any fees for services on the first appeal to this court. Appellant submits that under I.C. § 41–1839, considering appellant's status as defined in I.C. § 72–801, that appellant is in fact a "surety insurer" or "guaranty contractor" as defined in both I.C. § 72–801, and § 41–1839. It is claimed that under I.C. § 72–611 there is no liability on appellant's part as this is a

case of first impression and there was no unreasonable denial within the meaning of I.C. § 72–611, as the Industrial Accident Board held in the first instance favorably to appellant. The statutes involved in appellant's contention in pertinent part are set out in the footnote below.[1]

Appellant further contends that the trial court was without jurisdiction to allow any fees for the first appeal to this court citing Molstead v. Reliance Nat'l. Life Ins. Co., 83 Idaho 458, 364 P.2d 883 (1961). Appellant also asserts that no "proof of loss" has been furnished as required by I.C. § 41–1839. Appellant in support of its contentions, has also cited: In re Hillenbrand, 80 Idaho 468, 333 P.2d 456 (1958); Passmore v. Austin, 73 Idaho 484, 253 P.2d 800 (1953).

 On the first appeal to this court no attorney's fees were sought, which would have been premature in any event, for no determination had as yet been made that appellant was Woods' insurance carrier. The trial court having determined appellant was Woods' carrier, the provisions of I.C. § 41–1839 became effective and the trial court was authorized to make an allowance for Woods' attorney's fees.

 Although no "proof of loss" as mentioned in I.C. § 41–1839 was submitted to appellant, it by denying any liability as the insurance carrier effectively waived any requirement that proof of loss be furnished it. Tippets v. Gem State Mut. Life Ass'n., Inc., 91 Idaho 91, 416 P.2d 38 (1966); Sweaney & Smith Co. v. St. Paul Fire & Marine Ins. Co., 35 Idaho 303, 206 P. 178 (1922).

 Appellant's contention that it was a "surety insurer" or "guaranty contractor" as mentioned in I.C. § 41–1839 and hence is

---

1. I.C. § 72–801. Employers, but not including the state or the municipal bodies mentioned in 72–103, shall secure compensation to their employees in one of the following ways:
 1. * * *
 2. By depositing and maintaining with the industrial accident board security satisfactory to the board securing the payment by said employer of compensaton according to the terms of this act. Such security may consist of a surety bond or guaranty contract with any company authorized to do surety or guaranty business in Idaho and having a sufficient deposit with the state treasurer upon which execution may lawfully be issued against said company on behalf of any workman secured under said bonds or contracts.
 I.C. § 41–1839. (1) Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.
 (2) * * *
 (3) This section shall not apply as to actions under the workmen's compensation law which are subject to section 72–611, Idaho Code. This section shall not apply to actions against surety insurers by creditors of or claimants against a principal and arising out of a surety or guaranty contract issued by the insurer as to such principal, unless the liability of the principal has been acknowledged by him in writing or otherwise established by judgment of a court of competent jurisdiction.
 I.C. § 72–611. If the board or any court before whom any proceedings are brought under this act determines that the employer or his surety contested a claim for compensation made by an injured workman * * * without reasonable ground, or that an employer or the employer's surety neglected or refused within a reasonable time, after receipt of a written claim for compensation, to pay to such claimants or to dependents in cases where the workman is killed as a result of a compensable accident the compensation provided by law, the employer or such employer's surety shall pay reasonable attorney fees in addition to the compensation provided by this chapter. In all such cases the fees of attorneys employed by injured workmen or dependents of deceased workmen shall be fixed by the industrial accident board.

not obligated to pay attorney's fees is answered by the provisions of that section. In the instant case, the principal's (Woods) liability to the claimant (Martin) has been adjudicated by the Industrial Accident Board, the only tribunal with jurisdiction to consider industrial accident cases, (I.C. § 72–102), acting in a quasi-judicial capacity. Golay v. Stoddard, 60 Idaho 168, 89 P.2d 1002 (1939); In re Bones, 48 Idaho 85, 280 P. 223 (1929); Cook v. Massey, 38 Idaho 264, 220 P. 1088, 35 A.L.R. 200 (1923). Such adjudication established Woods' liability to Martin in a manner equivalent to that of a "judgment of a court of competent jurisdiction."

Passmore v. Austin, supra, cited by appellant, involved an action by the insured against the alleged insurer as here. The same is true in the case of In re Hillenbrand, supra. See, Wilson v. Gardner Associated, Inc., 91 Idaho 496, 426 P.2d 567 (1967). In Molstead v. Reliance National Life, supra, it was held that the trial court was without authority to allow and determine attorneys' fees before this court. In the Molstead case, after judgment for the insured was entered, the trial court entered an order requiring the appellant insurance company "to pay $300 to respondent as a reasonable attorney's fee should she prevail upon the appeal." The factual situation here is different. After judgment was first entered for the appellant insurance company, Woods appealed successfully, and the cause remanded to the trial court, which court subsequently entered judgment for Woods. In assessing attorney's fees under the statute the court considered the additional work involved in taking the initial appeal, which was proper. We find no error in the judgment in this regard.

 Respondent Woods has timely sought by motion fees for his attorney on this appeal. It is our conclusion that this motion should be granted and that five hundred dollars is a reasonable sum to be allowed respondent Woods as attorney's fees on this appeal. Dillehay v. Hartford Fire Ins. Co., 91 Idaho 360, 421 P.2d 155 (1966); Farley v. Farmers Ins. Exch., 91 Idaho 37, 415 P.2d 680 (1966); Heath v. Utah Home Fire Ins. Co., 89 Idaho 490, 406 P.2d 341 (1965).

The judgment appealed from is affirmed. The district court is directed to add the amount of attorney's fees herein awarded to respondent Woods, to the judgment against appellant (defendant below). Costs to repondents.

SMITH and SPEAR, JJ., and DONALDSON, D. J., concur.

McQUADE, Justice (dissenting).

Simply and generally stated, the material facts in this action follow. For year one, an independent resident insurance agent contracts current workmen's compensation insurance coverage for one of its principals, an out-of-state insurance company. The agent tells the insured the principal automatically will renew the policy. In year two the principal does so. During year two the principal revokes the agency. The principal does not renew the insured's policy for year three. Year three commences with an accident that would have been covered had the policy been renewed.

The question raised is whether the independent agent had apparent authority to bind one of his principals to renew a policy in perpetuity, without the principal's knowledge or consent.

As a general proposition, an agency is a mutual arrangement and its duration lasts only until the principal (or agent) revokes it; the agent's rightful power to represent the principal then ends.[1] Because the principal has power to terminate the agency relationship prior to commencement of the renewal policy's protection period, an insured reasonably could not assume the independent agent had authority to bind

1. See Restatement (Second) Agency § 118 (1958); Seavey, Agency § 46 (Hornbook ed. 1964); 2 C.J.S. Agency § 73, p. 1153 (1936); 2 Am.Jur. Agency § 37 (1936).

forever the principal to legal relations not to begin until that future period.[2] No authority or reasoning contained in the majority opinion warrants abandoning the basic principle of agency law that a reasonable man test determines the extent of apparent authority.[3]

The majority decision rests in part on Huppert v. Wolford, 91 Idaho 249, 420 P.2d 11 (1966). That decision, however, only holds that a general resident agent " 'engaged in * * * soliciting, selling, writing and delivering health, life, casualty, accident and fire insurance for' " several companies has apparent authority *while his agency continues* to bind one of his principal companies for a policy of public liability insurance on a logging truck. Huppert v. Wolford thus concerns only the types of risk for which a current agent may bind his principal for immediate coverage.

The majority also relies in part on statutory provisions requiring out-of-state insurers to act through Idaho agents concerning risks insured here. However, I.C. § 41–337,[4] similar to I.C. § 41–901 which was the statute controlling insurance by out-of-state companies in 1960, demands only that an out-of-state insurer *have* or *use* a resident agent when protecting risks in Idaho. The statute in no way purports to change the traditional principles governing the agency relationship, such as scope of an agent's apparent authority.

2. Cf. Whalen v. Vallier, 46 Idaho 181, 266 P. 1089 (1928).

3. See Clements v. Jungert, 90 Idaho 143, 408 P.2d 810 (1965); Restatement (Second), Agency § 49(a) and comment (c) to § 8.

4. "41–337. *Resident agent, countersignature law.*—Except as provided in section 41–338, no authorized insurer shall make, write, place or cause to be made, written or placed, any policy or contract of insurance or indemnity of any kind or character, or a general or floating policy covering risks on property located in Idaho, liability created by or accruing under the laws of this state, or undertakings to be performed in this state, except

The majority opinion gives an independent resident agent power to bind in perpetuity one of his principal insurance companies for legal relations which do not begin until a time when the agent may have lost by revocation his power to represent the principal. To escape such potential liability, the majority would require the principal to notify of the revocation every insured whose policy has been placed by the agent. No authority or reasoning presented by the majority compels this result—a grave departure from basic principles of the law of agency. Thus, I dissent.

through its resident insurance agents licensed as provided in this code, who shall countersign all policies or indemnity contracts so issued, and who shall keep a record of the same, containing the usual and customary information concerning the risk undertaken and the full premium paid or to be paid therefor, to the end that the state may receive the taxes required by law to be paid on premiums collected for insurance on property or undertakings located in this state. When two (2) or more insurers issue a single policy of insurance the policy may be countersigned on behalf of all insurers appearing thereon by a licensed agent, resident in this state, of any one such insurer."