FEDERAL MUTUAL INSURANCE
COMPANY, Petitioner,

v.

Floyd HANKS, Executor, et
al., Respondents.

Supreme Court of Tennessee.

Dec. 27, 1976.

Hewitt P. Tomlin, Jr., Waldrop, Hall, Tomlin & Farmer, Jackson, for petitioner.

Lyman Ingram, Ashley, Ashley & Lawson, Dyersburg, Thomas E. Harwood, Trenton, for respondents.

## OPINION

COOPER, Chief Justice.

The issue presented in this case is whether an automobile owned by the insured but out of service being repaired at the time the automobile liability insurance policy issued, and which was later placed in service in place of the insured automobile, is within the coverage provided in the policy for a "newly acquired automobile."

Petitioner, Federated Mutual Insurance Company, was held to be obligated to pay judgment secured by Charles D. Biggers, James D. Osborne, and W. T. Osborne against respondents, Marshall Hanks, and the Estate of German J. Hanks, deceased, as compensation for damages arising out of an automobile accident which occurred in Gibson County, Tennessee, on July 15, 1966. The Court of Appeals, with one judge dissenting, reversed and remanded the cause for a new trial. In doing so, the majority of the court held "that if, as contended by [respondents], the 1955 Chevrolet did not come into service as a vehicle of transportation before July 13, 1966, then said 1955 Chevrolet was covered as a newly acquired automobile under the policy" issued by peti-

tioner, and remanded the case for a determination of when the 1955 Chevrolet came into service as a vehicle of transportation. The dissenting judge took the position that the issue to be decided on remand was not controlling, that the policy issued by Federated Mutual did not afford coverage of the automobile involved in the accident, and that the cause should be dismissed. This court granted certiorari to consider the question of coverage.

The material facts are not in dispute. The record shows that on January 22, 1966, respondent Marshall Hanks purchased a 1955 Chevrolet automobile for use by his father, German Hanks. On purchase, the automobile was driven immediately to a nearby repair shop, LaRue's, to be put in "good running condition."

In February, 1966, Marshall Hanks purchased a 1957 Chevrolet automobile for his father to use until the 1955 Chevrolet was ready for use.

On March 23, 1966, Marshall Hanks applied for and was issued an automobile liability insurance policy by Federated Mutual, covering the 1957 Chevrolet for the period of March 30, 1966, to March 30, 1967. German Hanks, his father, was listed as a driver and an additional premium was paid due to the age of Mr. Hanks. The Federated Mutual agent was not told of the 1955 Chevrolet, nor was there any information given in the policy application.

German Hanks used the 1957 Chevrolet regularly from March 23, 1966, until July 13, 1966, when it began to give trouble. German Hanks then drove the 1957 Chevrolet to LaRue's, left it for repairs, and took in its place the 1955 Chevrolet. License plates were removed from the 1957 Chevrolet and were placed on the 1955 Chevrolet so that it could be operated.

On Friday, July 15, 1966, German Hanks, while driving the 1955 Chevrolet, was involved in an automobile accident, which led to the recovery of damages by the Osbornes and Mr. Biggers.

Three days after the accident, Marshall Hanks requested his local insurance agent to change the coverage of the Federated Mutual policy from the 1957 Chevrolet to the 1955 Chevrolet, which was done.

The provision of the insurance policy issued by Federated Mutual pertinent to a decision in this case is as follows:

"IV. Automobile defined. . . .

(a) Automobile—the word automobile means:

(1) Described Automobile—The motor vehicle or trailer described in this policy.

. . .

\*   \*   \*   \*   \*   \*

(4) Newly Acquired Automobile—an automobile ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required under coverages A, B, and division 1 of coverage C if the newly acquired automobile replaces an owned automobile covered by this policy. . . ."

The above provision, though standard, has been the subject of much litigation. With very few exceptions, the courts have held that the provision is free from ambiguity and that in order to be "newly acquired" so as to come within the policy coverage, an automobile must have been acquired after the commencement of the policy. *See Farmers Insurance Exchange v. Smith*, 15 Ariz.App. 42, 485 P.2d 866 (1971) and numerous cases cited therein. *See also* 7 Appleman, Insurance Law and Practice, § 4293, p. 92 wherein it is stated: "Nor is a vehicle newly acquired when it is previously owned by the insured and merely put back into service."

◼ Noting the above general rule, the majority of the Court of Appeals held that "the rule in Tennessee is that ordinarily, absent unusual circumstances, the 'newly acquired automobile' provisions of automo-

bile liability insurance policies will not afford coverage for automobiles owned by the insured at the time the policy was issued." The court then concluded that an automobile was a "newly acquired automobile" within the meaning of the policy if "it [first] came into service as a vehicle of transportation" after the policy was issued, citing *Manns v. Indiana Lumbermen's Mutual Insurance Company*, 482 S.W.2d 557 (Tenn.App.1971). The *Manns* case does not stand for this proposition. There, the issue was whether automobiles, inoperative, worn out, *and permanently withdrawn from service prior to the issuance of the policy of insurance*, were "automobiles" within the meaning of the policy provision excluding coverage of after-acquired automobiles, unless all automobiles owned by the policy holder were insured by the company. The court properly held that they were not. It does not follow from this holding that ownership of an automobile is not acquired until the automobile is placed into service as a vehicle of transportation. The key to coverage of a "newly acquired automobile" is not when it comes into service as a vehicle of transportation, but when it was acquired. And as was pointed out in *Mahaffey v. State Farm Mutual Automobile Insurance Co.*, 175 So.2d 905 (La.App.1965), at page 909:

"An automobile, although in need of a new motor, is still an automobile, as this term is ordinarily understood. Frensley did not acquire an automobile. He only put a new motor in an old automobile he already owned.

Furthermore, we think this construction is consistent with the intention of the contracting parties. The obvious purpose of the provision regarding 'newly acquired automobiles' is to provide automatic coverage, without even the necessity of notice to the insurer, for an automobile acquired by the named insured during the policy period to replace a vehicle covered by the policy. But this provision was not intended to cover another automobile owned by the insured at the time the policy issued and used to replace the described vehicle. To hold otherwise, in a situation like the present, would permit an assured with a number of vehicles, some in operating condition and some in need of repair, to put them in and out of service, contending that all are covered by the policies, when in fact no premiums are being paid for some of them. This may be possible under a fleet policy, but not under the separate policies."

 It is undisputed that Marshall Hanks owned the 1955 Chevrolet at the time the policy of insurance issued from Federated Mutual. This being so, the automobile does not qualify as a "newly acquired automobile" and there was no insurance coverage at the time of the accident that was the predicate of the judgments secured against respondents by the Osbornes and Mr. Biggers.

The judgment of the Court of Appeals remanding the case for a new trial is reversed, and the case is dismissed. Costs are adjudged against respondents, Marshall Hanks and Floyd Hanks, as Executor of the Estate of German J. Hanks, deceased.

FONES, HENRY, BROCK and HARBISON, JJ., concur.