Cuba C. ROGERS, Jr., Plaintiff-Appellee,

v.

TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, Defendant-Appellant.

Court of Appeals of Tennessee, Middle Section.

Nov. 7, 1980.

Dicken E. Kidwell, Murfreesboro, for plaintiff-appellee.

Royce Taylor, Willis S. Turner, Murfreesboro, for defendant-appellant.

## OPINION

LEWIS, Judge.

Plaintiff sued defendant alleging that plaintiff had in full force and effect an automobile liability insurance policy issued by defendant when the automobile covered by the policy was involved in an accident on May 5, 1978, and that defendant refused to defend a suit arising out of that accident or pay a judgment rendered against plaintiff as a result of the accident. From a judgment of the Chancellor holding that the vehicle was insured on the date of the accident and awarding plaintiff a judgment of $12,992.45, defendant has appealed and presents three issues. Issues one and two, which we discuss together, are as follows:

1. Did the Court err in finding that a telephone call was sufficient to provide the plaintiff with insurance pursuant to a policy which was issued to cover a vehicle no longer in service, which vehicle had been replaced by another automobile owned by the insured at the time the policy was issued?

2. Did the Court err in finding that the plaintiff actually called the defendant to request coverage on the vehicle prior to its being involved in an accident?

The pertinent facts are: Defendant issued its automobile insurance policy which provided liability coverage for a 1968 Oldsmobile owned by plaintiff. The same policy had previously covered a 1969 Pontiac which had become inoperable and had been taken out of service by plaintiff. The 1968 Oldsmobile then was placed in service. Sometime prior to May 5, 1978, the 1968 Oldsmobile "threw a rod in the motor" and became inoperable. Plaintiff then had the motor in the 1969 Pontiac replaced and placed the 1969 Pontiac in service. Plaintiff then "called Farm Bureau and told

them I wanted to switch the coverage off the little Olds onto the Pontiac." Plaintiff was told by a lady in the Farm Bureau office that he "would have to come in and sign the papers." Plaintiff told the lady that he was on his way to Cookeville and that when he returned on the weekend that he would come in and sign. When plaintiff returned to Murfreesboro from Cookeville, he learned that his wife who was in the hospital in Nashville was to be released from the hospital, so he went to Nashville to get her. He learned, after returning home that night, that his son had been involved in an accident on that same night, May 5, 1978, while driving the 1969 Pontiac. As a result of the accident in which his son was involved plaintiff was sued, and defendant refused to defend the suit. A judgment was rendered against plaintiff for $11,070, court costs of $135, and plaintiff incurred attorneys fees of $1400 in defending the suit.

Robert Rose, who had been agency manager of the local office of Tennessee Farm Bureau for thirty-one years, testified, in response to a question as to what type procedure was followed when a policy is transferred from one vehicle to another, as follows:

A. If they don't come by and they call on the telephone, we have a form that we fill out. *It is what we call a binder form.* We take the information about the vehicle, the type of vehicle, the serial number, and so forth if he has it, and then we ask him to come by at his earliest convenience. (emphasis ours) And then we take that and put it in his folder and we put it in a separate file. Then every week, once every week, we go through those, and if they haven't come in within a week's time, we get back in touch with them so we can complete the transaction.

Mr. Rose testified that this was standard procedure in the office and that the form was filled out at the time of the telephone call. He further testified that there was no record in plaintiff's file regarding transferring the insurance from the 1968 Oldsmo-

bile to the 1969 Pontiac. Mr. Rose testified that any one of five people could have taken the call from plaintiff. Mr. Rose further testified that the requirement that a person come into that office and sign a form was an interoffice procedure instituted by him and was not required by the company.

Cindy Fletcher, a secretary in defendant's office, testified that plaintiff usually came to her when he had business to transact in the office, that she had no knowledge of a phone call from plaintiff regarding changing the insurance from the 1968 Oldsmobile to the 1969 Pontiac. She testified that there are "three or four girls that work with the automobile insurance" and that any call coming in regarding automobile insurance "would have been transferred to one of us."

While defendant correctly contends that the 1969 Pontiac was not a "newly acquired automobile" under the terms of the policy, both this contention and the case of *Federal Mutual Insurance Co. v. Hanks*, 545 S.W.2d 93 (Tenn.1976), are inapposite to the case at bar. The facts in *Federal Mutual* are that on January 22, 1966, the plaintiff purchased a 1955 Chevrolet automobile and immediately drove it to a repair shop so it could be put in running condition. In February, 1966, plaintiff purchased a 1957 Chevrolet automobile to be used until the 1955 Chevrolet automobile was ready for use. On March 23, 1966, a policy of automobile liability insurance was issued covering the 1957 Chevrolet. The insurance agent was not told of the 1955 Chevrolet, nor was any information given concerning the 1955 Chevrolet in the policy application. On July 13, 1966, the 1957 Chevrolet began to give trouble. It was then driven to a garage, left for repairs, and the 1955 Chevrolet was put into use. On July 15, 1966, the 1955 Chevrolet was involved in an automobile accident. At no time was the insurance company apprised that the 1955 Chevrolet was to be put into use nor was the company notified to change coverage from the 1957 Chevrolet to the 1955 Chevrolet. Plaintiff contended that the 1955 Chevrolet was a newly acquired automobile and that "own-

ership of an automobile is not acquired until the automobile is placed in service as a vehicle of transportation." 545 S.W.2d at 95. The court held that this contention was not sound and that "the key to coverage of a 'newly acquired automobile' is not when it comes into service as a vehicle of transportation, but when it was acquired." *Id.* In the case at bar there is no contention that the 1969 Pontiac was a newly acquired automobile. Plaintiff testified that he had the 1969 Pontiac, that it had been insured at one time prior to the 1968 Oldsmobile being insured, and that when the 1968 Oldsmobile became inoperable, he had a new engine put in the 1969 Pontiac and put it into service, that at that time he called the agent's office and informed them that he wanted to substitute the 1969 for the 1968 Oldsmobile. The issue here thus becomes one of fact. Did plaintiff call defendant's office and inform them that he wished to delete the 1968 Oldsmobile and substitute the 1969 Pontiac on the policy?

The Chancellor found that plaintiff had called and that there was nothing in the record to contest or to place in doubt plaintiff's veracity or his truthfulness. The decision of the Chancellor as to the credibility of witnesses is final and not subject to review in the appellate court. *Early v. Street*, 192 Tenn. 463, 469, 241 S.W.2d 531, 534 (1951).

The record does not support defendant's contention that before there would have been coverage on the 1969 Pontiac a written endorsement would have had to issue and plaintiff would have had to have gone to defendant's office and signed a paper requesting a change from the 1968 Oldsmobile to the 1969 Pontiac.

Mr. Rose testified that it was not company procedure but was inter-office procedure, instituted by him, that required a person to sign requesting a change in their policy or to transfer insurance from one vehicle to another. When a person called on a telephone and requested a change, the person in the office receiving the call completed a "binder form." "Binder" is defined as

a verbal contract of insurance in praesenti of which the insurance agent makes a memorandum, temporary in its nature, thus constituting a short method of issuing a temporary policy to continue until execution of the formal one.

*Carew, Shaw & Bernasconi v. General Casualty Co.*, 189 Wash. 329, 65 P.2d 689 (1937).

Under Mr. Rose's inter-office procedure insurance was provided on a temporary basis after a phone call was received until the insured came in and formerly signed requesting the change. If the person requesting the change did not come in within a week's time, someone in the office would "get back in touch with them so we can complete the transaction."

Defendant's issues one and two are without merit.

Defendant's third issue is:

3. Did the Court err in failing to admit testimony regarding voice stress analysis of plaintiff's answers to questions regarding whether he had called the defendant to request coverage?

Defendant's entire argument in regard to this issue is as follows:

Furthermore, the defendant attempted to offer the results of a voice stress analysis of Mr. Rogers when he was asked if he had called about changing the coverage on the vehicles. Mr. Rogers had agreed that the tape recording of his answers could be analyzed, and on that basis the results should have been admitted after a proper foundation was laid by the expert witness as to the method of analysis and its reliability.

Tennessee Court of Appeals Rule 6 provides:

(a) Written argument in regard to each issue on appeal shall contain:

1. A statement of the alleged erroneous action of the trial court which raises the issue, with citation to that part of the record where the alleged erroneous action is recorded.

2. A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record

where appellant's challenge of the alleged error is recorded.

3. A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

Defendant has completely failed to comply with Rule 6.

■ In any event, this Court is at a complete loss to know how we could consider this issue. Defendant's counsel stated that he would call a Mr. Allen Jones, who would testify "that there was stress on the tape as to question number 4." He offered no proof concerning the nature of "voice stress analysis." Defendant offered no proof as to what could be accomplished by "voice stress analysis." Defendant did not tender any proof regarding "voice stress analysis." Under the circumstances, we are unable to consider this issue.

The judgment of the Chancellor is affirmed. Costs are taxed to defendant, and the cause is remanded to the Chancery Court for enforcement of its judgment, collection of costs, and any other necessary proceedings.

CANTRELL, J., and T. MACK BLACKBURN, Special Judge, concur.