IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 30, 2001 Session

# DIRECT INSURANCE COMPANY v. GEORGE MICHAEL BROWN

**Direct Appeal from the Law Court for Sullivan County**
**No. C-11088(L)     Hon. Richard E. Ladd, Judge**

**FILED OCTOBER 23, 2001**

**No. E2001-00412-COA-R3-CV**

Trial Court declared coverage under policy issued by plaintiff to defendant for a motor vehicle accident, holding the vehicle operated by defendant was a replacement vehicle. On appeal, we reverse.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Law Court Reversed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Jerry M. Martin, Knoxville, Tennessee, for Appellant.

David S. Bunn, Bristol, Virginia, and Gregory K. Haden, Kingsport, Tennessee, for Appellee.

**OPINION**

In this declaratory judgment action, the Trial Court determined that the motor vehicle being operated by the insured, George Michael Brown, on the day of his accident, was covered under the insurance policy issued by plaintiff to Brown.

Direct argues on appeal, that Brown owned a 1985 Chevrolet Monte Carlo, and that on June 6, 1999, he was involved in an accident while driving the Monte Carlo, and that its policy

excluded coverage for any vehicle other than the "covered auto" which is owned by the insured, or furnished or available for the insured's regular use. Direct insists that the only "covered auto" listed in the policy was a Ford Taurus, and that Brown had purchased the Monte Carlo prior to his application for insurance.

At the trial, Brown was not present for the hearing, but portions of his deposition were read into the record. He testified that the he signed the application for insurance on May 3, 1999, and that he listed a 1990 Ford Taurus which he owned at the time. He further testified that he was in the process of buying a Monte Carlo, and that he discussed with the agent the cost of adding it to the policy. He testified that this was the same Monte Carlo that he was driving when he had the accident on June 6. Brown testified that he took possession of the Monte Carlo in April but the seller held the title as security until he paid off the debt for the purchase. He testified that on May 3, 1999, he asked about insuring it and was "fixing to" own it, but still owed about $200.00, and that he wasn't sure when he left the insurance office, whether the Monte Carlo was insured or not, but that he intended to go back and put the Monte Carlo on the policy, but it just "slipped" his mind.

Brown testified that he had owned the Ford Taurus for a couple of years prior to May 3, 1999, and that the motor blew up prior to June 6, 1999, and that he began driving the Monte Carlo about a week before the accident, because he had no other transportation. He conceded that he initialed the application stating that he had all cars in his household listed. When asked whether he thought he had insurance on the Monte Carlo, he replied he didn't know whether he did or not, and that on May 3, the Monte Carlo was sitting in his yard, but he could not use it because he didn't have tags for it. He testified that he had the keys and had full possession of the Monte Carlo, and could have used it at any time, and further that he could have gotten tags for it when he got the title. Brown also stated, however, that he did have the title to the Monte Carlo in his possession at the time he applied for insurance, and that he had gotten tags for the Monte Carlo at the end of April, which contradicted his earlier testimony.

The registration records for the Monte Carlo show that it was purchased in March of 1999, and that the title was issued in Brown's name on June 11, 1999. It is also clear that the tags were issued to Brown in April 1999, because they expired one year later, in April of 2000.

The Trial Court, in concluding there was coverage under plaintiff's policy, said that he found that Mr. Brown had the Monte Carlo sitting up in his yard with no intent to even use it until it was "purchased and he had the title, purchased as in his mind." Clearly, under the law, he was the owner at the time of the application of May 3, 1999, although he did not have title. The Trial Court, in finding the vehicle to be a replacement vehicle, said "and I find that it's a replacement vehicle under §J of the definitions on page 2 of the policy . . . I am aware that the policy says - has a condition that if he acquires the vehicle during the policy period. Technically, under the law he had acquired the Monte Carlo prior to the policy period, but I find that in the mind of the insured he had not acquired it, was not using it, and that it - and the accident took place during the 30-day grace period . . . ."

The standard of review is *de novo* with a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716,719 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the trial court's legal conclusions. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993). The evidence is undisputed that the application signed by Brown on May 3, 1999, only listed a Ford Taurus, and that Brown represented that this was the only vehicle in his household, and the coverage period was from May 3, 1999 to May 3, 2000.

The policy defines a "covered auto" as any vehicle shown in the declarations (i.e. the Taurus), or an auto "on the date you become the owner" if "you acquire the vehicle during the policy period and it replaces one shown in the Declarations and you ask us to insure it within 30 days after you become the owner." Appellee argues that "acquire" and "policy period" are not defined in the policy, and thus that these terms are subject to interpretation.

Our courts have set out clear rules of construction regarding an insurance contract, and have held that the language of the policy "must be taken and understood in its plain, ordinary, and popular sense." *American Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000). *Hutchison* teaches that where a term is not defined in an insurance policy, the court may refer to dictionary definitions. "Acquire," taken in its plain, ordinary sense, would be "to gain by any means, usually by one's own exertions; to get as one's own; to obtain by search, endeavor, investment, practice, or purchase; receive or gain in whatever manner; come to have." *Black's Law Dictionary*, 24 (6th ed. 1990). The term "acquire" is not ambiguous, and the evidence in this case established that Brown acquired the Monte Carlo in April of 1999. The Trial Court's conclusion that Brown owned the Monte Carlo prior to May 3, 1999 is supported by the evidence.

In order for the Monte Carlo to qualify as a replacement vehicle under the policy terms, however, it had to be acquired during the policy period. Appellee argues that "policy period" is not defined in the policy and is ambiguous, because Brown had insurance with Direct for four years, and thus could reasonably have thought the policy period encompassed April 1999. Brown did not testify this was his belief, but appellee's insistence is not a reasonable interpretation of the term, because the declarations of the policy unequivocally state that coverage is from May 3, 1999 to May 3, 2000.

Further, appellee's argument that there was no increased risk to Direct because the Monte Carlo replaced the Taurus, begs the question. Prior case law has settled that the question of whether the Monte Carlo was a replacement vehicle for the Taurus must be determined at the time the Monte Carlo was acquired, not at the time the Taurus became inoperable. *Allstate Ins. Co. v. Young*, 639 S.W.2d 916 (Tenn. 1982). The evidence does not establish that the Monte Carlo was a replacement vehicle pursuant to the policy's terms because it was acquired prior to the policy being issued, and not within the policy period, and at the time it was acquired, it did not serve to replace the Taurus, which was still operable and being used. Essentially, the Trial Court's found this as a fact, but ruled there was coverage. The Trial Court's conclusion on this issue is in error, and is inconsistent with prior opinions of our Supreme Court. *See Allstate Ins. Co. v. Young*; *Federal*

*Mutual Ins. Co. v. Hanks*, 545 S.W.2d 93 (Tenn. 1976).

Accordingly, we conclude there was no coverage under plaintiff's policy with Brown for the accident of June 6, and the Judgment of the Trial Court is reversed and the cause remanded, with the cost of the appeal assessed to appellees, George Michel Brown and Terry Hobson.

_____
HERSCHEL PICKENS FRANKS, J.